MYRTLE WATTLES v. JOHN E. DUBOIS.

*Replevin for unthreshed wheat—Description of property—Landlord and tenant.*

1. The refusal by a tenant to deliver to his landlord his half of the unthreshed grain grown on the leased premises is a waiver of the tenant's right to possession for the purposes of such delivery, and the landlord has a right to the immediate possession of his half, and may maintain replevin therefor.

2. The description of property in a writ of replevin as "250 bushels of wheat of the *Fultz* variety, raised and grown upon the farm of the plaintiff, on section seven, in the township of Portage, in said county, and harvested the present season," it appearing that the wheat was of the *Clawson* variety, and it not being shown that any wheat of the variety named in the writ was grown or harvested on plaintiff's farm *that* year, is sufficient.

Error to Kalamazoo. (Pealer, J., presiding.) Argued October 6, 1887. Decided October 20, 1887.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*George M. Buck,* for appellant.

*Howard & Roos,* for plaintiff.

CHAMPLIN, J. On the fifteenth day of April, 1885, the plaintiff let a farm on shares to defendant. The plaintiff was to furnish half of the seed necessary and used by defendant in farming the land, and one-half of the live-stock which by mutual agreement the parties deemed necessary and advantageous to be kept upon the land, except such teams as defendant might furnish for working and farming said land. Plaintiff was also to pay the taxes, etc. Defendant was to work the land, and deliver to plaintiff in the city of Kala_ mazoo, as rent for said land, one-half of all crops raised

thereon.   The agreement was in writing, and s'gned by the parties.

At the time the agreement was entered into, the plaintiff had put in a crop of wheat, consisting of 24 acres, upon land belonging to his mother adjoining that of plaintiff, and after defendant went into possession, it was verbally agreed between plaintiff and defendant that defendant might have the wheat then growing upon the 24 acres, in consideration of defendant's leaving 24 acres of wheat in the ground the next year.

The parties disagree upon the point whether the 24 acres which defendant was to sow, and leave upon the ground for plaintiff, was to be sown upon plaintiff's land or that of his mother.   In the view I take of the merits of this case, the point is not material.

At seeding time the next fall the defendant had sown about 60 acres to wheat upon the land of the plaintiff.   After he had finished, he says that he then offered to plow the same 24 acres on the adjoining land belonging to plaintiff's mother, inasmuch as he had not seeded it in the spring, as they had talked, but plaintiff told him that he could not sow wheat then, " as it goes out of my hands;" that he replied, " That cuts that top off."

Prior to the time the wheat put in by defendant on plaintiff's land was harvested, the plaintiff asked defendant to go with him, and stake out the acres that he thought would be equal to the 24 acres, and he did not do it.   Plaintiff then got a neighbor to stake off the quantity which he thought would equal the 24 acres, and went in and harvested, and drew it away.   The testimony does not show that defendant made any objection to this action of the plaintiff; but whether he did or not has no bearing upon what followed.

Defendant harvested the balance of the crop, and, when he was ready to thresh it, he told plaintiff that he should not deliver to him any of the wheat, and denied that he had any

right or interest therein. He had the thresher set ready to thresh, and teams there ready to haul it away. The construction which we put upon the instrument under which the farm was let is that the defendant farmed the premises upon shares, and that the parties were tenants in common of the crop. Upon learning from the defendant that he denied any right of plaintiff to the wheat about to be threshed, and his refusal to divide according to the agreement, plaintiff brought an action of replevin to obtain possession of his half of the wheat.

The first point raised by defendant is that, as the wheat had not yet been threshed, a writ of replevin calling for the seizure of 250 bushels of wheat was premature. The testimony shows that about 75 bushels had been threshed when the sheriff arrived, and that they kept on threshing, and the wheat was divided by the sheriff as it came from the thresher.

The general rule is, as claimed by the counsel for defendant, that the right to maintain replevin must exist at the very moment the writ is issued. And the defendant claims that until the wheat was threshed, and the plaintiff's share in a condition to set apart and deliver, it was not the subject of replevin; that, as tenant in common, defendant had a right to the possession of the grain until required to deliver to plaintiff by the terms of the lease; that the contract as to time and place of delivery was a substantial right of the defendant, which plaintiff could not take away.

We see no application for this reasoning under the facts in this case. Defendant cannot insist on his right to the possession, in order to deliver the wheat under the terms of the lease, when he has repudiated the contract, and refused to be bound by its terms. He has waived all right to the possession for that purpose, for he had said that he would not divide the wheat, nor give plaintiff any share thereof. It

follows that the plaintiff had a right to immediate possession of his half.

The writ commanded the sheriff to seize—

" Two hundred and fifty bushels of wheat of the Fultz variety, raised and grown upon the farm of the plaintiff, on section seven, in the township of Portage, in said county, and harvested the present season."

The sheriff returned that he had seized the property described in the writ, and delivered the same to the plaintiff; the number of bushels taken under the writ being $228\frac{1}{4}$.

The fact that the wheat was not threshed at the time, and so incapable, at the moment, of division by measurement in the bushel, ought not to defeat this action. Suppose that the wheat was in the stack ready to be threshed, and the defendant made no preparations for threshing, denied all right of plaintiff to any share therein, and even declined to thresh, can there be any doubt that the plaintiff, as a tenant in common, could have peaceably entered, taken possession, and threshed the wheat, and delivered one-half thereof to defendant, and retained his own half thereof? If so, can there be any doubt that the plaintiff, under the facts in this case, had a right to the possession of one-half of the wheat in question at the time the writ was issued? Wheat in the head after it is harvested, and before it is threshed, is as much wheat as it is after it is separated from the straw and winnowed. It is true that an exact division is more readily and easily ascertained after such separation than before. Stating in the writ the number of bushels refers to the quantity to be taken, and not to the condition or situation the grain is in.

It is clear, under the testimony in this case, that at the time the writ issued the plaintiff was entitled to the possession of one-half of the wheat in controversy. He estimated that half at 250 bushels. The officer was directed to replevy

that amount.   He executed the writ by seizing and delivering to the plaintiff 228¼ bushels, being one-half of the wheat then in the possession of the defendant, and no claim is made for the balance of the wheat named in the writ.

The court submitted the testimony to the jury, under proper instructions respecting the claims of the parties to the wheat that was to be put in by the defendant, and left upon the ground, in lieu of the 24 acres above mentioned, and they found against the defendant upon that point.

It is unnecessary to concern ourselves with what might have been the situation of the parties if the property had remained in such shape that it could not have been seized during the life-time of the writ, and the writ executed according to its command.   The right to the possession of the property at the time the writ issues is the test of the right to maintain the action, and not whether it is so situated that it can be immediately seized upon the writ.

It is also claimed that the property was misdescribed.   The writ, as above stated, calls for wheat of the Fultz variety, and the proofs show that the wheat taken was of the Clawson variety.   But we think this variance was immaterial, as the writ fully identified the wheat as that grown upon the plaintiff's farm, and there was no testimony showing that there was any wheat grown and harvested that year on the plaintiff's farm of the Fultz variety.

We have examined the errors assigned upon the admission of testimony, and also those relating to the charge, and refusals to charge as requested, and find no error therein. The questions above noticed are the main points in controversy, and, as we determine those against the position of the defendant, the judgment will be affirmed.

The other Justices concurred.