# THIRD DISTRICT, 1896.

---

## W. B. WORSHAM v. JOHN VIGNAL.

Decided September 30, 1896.

**1. Limitation—Amendment—New Cause of Action.**

An amendment in a suit for conversion of cattle which merely corrects the description of the property as to brands does not assert a new cause of action which would be subject to limitations.

**2. Same.**

An amendment in such suit increasing the number of cattle claimed to be converted, but alleging the conversion to have been within two years preceding the amendment is not subject to demurrer on the ground that the amended claim was barred by limitation.

**3. Limitation—Charge.**

In a suit for conversion of plaintiff's cattle under color of a fraudulent purchase from another the action arose upon and limitation ran from the date of the appropriation by defendant, not from that of the fraudulent sale. See charge held to properly present the issue of limitation upon such facts.

**4. Same—Case Followed.**

Rulings upon former appeal in Worsham v. Vignal, 5 Texas Civ. App., 473, followed.

**5.   Joint Ownership—Partnership—Immaterial Error.**

See evidence held to show a joint ownership of cattle in controversy and not a partnership, and to render rulings in charge as to what would constitute a partnership immaterial.

**6.   Partnership—Evidence—Opinion—Harmless Error.**

On the issue of partnership or joint ownership plaintiff should not be permitted to testify that he was a joint owner and not a partner, that being merely his opinion and conclusion of law.  But the admission of such testimony was harmless where the proof showed only a joint ownership and there was no evidence to establish a partnership.

**7.   Fraudulent Sale—Purchaser's Knowledge—Evidence.**

See evidence held sufficient to present and warrant a charge upon the issue of purchaser's knowledge of vendor's intent to defraud a joint owner with him in a sale of cattle.

**8.   Fraud—Evidence.**

On issue of fraud upon plaintiff in the purchase of his cattle from a joint owner with him and their conversion by the purchaser evidence that he had never paid the seller therefor was properly admitted,

**9.   Special Verdict.**

It is discretionary with the trial court to submit special issues and its action in refusing to do so will not generally be reviewed.  See case in which refusal was held proper.

**10.   Damages—Conversion.**

See damages for conversion of cattle held not excessive.

APPEAL from the District Court of Clay County.   Tried below before Hon. GEO. E. MILLER.

*A. K. Swan*, for plaintiff.—An amended petition setting up any new matter, or cause of action, is subject to the plea of limitation as of the date of its filing as to such new matter.

On a suit for conversion of personal property, any subject matter introduced by amendment filed more than two years after such conversion, is subject to the plea of two years limitation.

The evidence in this cause having shown conclusively on the one side that plaintiff and Joe Johnson were partners in the cattle in controversy, and there being no sufficient legal evidence to justify any other conclusion, it was error upon the part of the court to submit to the jury the question of joint tenancy.

The intentional fraud upon the part of the vendor will not affect the rights of the vendee unless knowledge of such fraudulent intention is brought home to the vendee at the time of the purchase, or circumstances sufficient to put him upon inquiry.

Testimony as to what had become of other cattle belonging to a partnership but not sold or delivered in the transaction out of which an action grows is immaterial and irrelevant, and especially when it is not shown that the party charged with the conversion of the other cattle had any connection with or knew about the disposition of such cattle so inquired about.   The uncontroverted testimony of Joe Johnson is that there were nine head of partnership cattle left in Hardeman County, which were not sold or delivered to Worsham.   Upon the trial of the

case and after Johnson had testified substantially to the facts above stated, plaintiff's counsel was permitted, over the objections of defendant, to ask what had become of said nine head of cattle, to which he answered: "I shipped them out and used the proceeds thereof." The plaintiff then asked witness whether he had ever accounted to Vignal for his interest in said nine head of cattle, and was permitted over defendant's objections to answer, in which he answered that he had not, that Vignal had not called upon him for a settlement.

It is error to permit a witness over objections to testify to a legal conclusion rather than to a fact. The plaintiff, John Vignal, without having stated anything of the circumstances under which, or the purpose for which the cattle in controversy were bought, was allowed to testify over the defendant's objections, as follows: "I owned them jointly with Joe Johnson."

The court erred in refusing to submit to the jury the special issues asked by the defendant, for the reason that the verdict upon the issues, and each of them, was material, and necessary to determine the rights of the parties upon the question of issue, to-wit: "If you should under the general charge find for the plaintiff for any sum, you will answer the following questions separately from your general verdict: 1st. Were Joe Johnson and John Vignal partners as joint tenants in the cattle in controversy? 2nd. If you find for plaintiff for the conversion of any of the cattle in question you will state how many cattle were so converted and the date of their conversion? 3rd. If you find for plaintiff for the conversion of any of the cattle in controversy, you will find how many of them were branded V X, and the value of such per head. 4th. If you find for plaintiff for the conversion of any of the cattle in controversy, you will find whether said cattle were of the same or different ages and values per head, and what values of each were."

The plaintiff having obtained knowledge of the sale of the cattle by Joe Johnson about November 1, 1888, and having had divers opportunities to have objected thereto, both to said Johnson and the defendant, and having failed to repudiate said sale or to demand settlement between himself and the defendant until the institution of this suit, about August 30, 1890, covering about twenty-two months, he should be held to have ratified and confirmed the terms and conditions of said sale, or at least to have waived the fraud and relied upon his rights under the contract.

Where a suit is brought for the conversion of 105 head of cattle all branded V X and the proof shows that only 95 head of cattle in said brand were converted, there can be no recovery for more than the value of the specific 95 head.

*J. A. Templeton*, for appellee.—Appellee's amended petition did not set up any new cause of action and appellant's exceptions were properly overruled. Texas Elevator Co. v. Mitchell, 78 Texas, 66; Railway v. Pape, 73 Texas, 502; Killebrew v. Stockdale, 51 Texas, 529; Tarking-

ton v. Broussard, 51 Texas, 554; Becton v. Alexander, 27 Texas, 667; Blum v. Mays, 1 White & W. C. C., secs. 475 and 521; Thompson v. Swearingin, 48 Texas, 555; Rabb v. Rogers, 67 Texas, 335; Hanrick v. Hanrick, 63 Texas, 622; Thouvenin v. Lea, 26 Texas, 614.

This suit was originally brought less than two years after the sale of the cattle in controversy by Johnson to appellant, and the amended petition filed by appellee did not set up any new cause of action, but such amendment only corrected a misdescription of some of said cattle, and appellee's claim for the conversion of these cattle was not barred by limitation.

The evidence of Johnson, the admission of which is here complained of by appellant, was admissible for the purpose of showing the bias and animus of the witness, and for the purpose of enabling the jury to properly weigh his testimony, and for the purpose of showing his intent in disposing of the cattle sold to appellant. Day v. Stone, 59 Texas, 612. Railway v. Mackie, 71 Texas, 495; Railway v. Moody, 71 Texas, 614.

Where, as in the case at bar, the purchaser of partnership property has notice at the time of his purchase thereof that the sale is fraudulently made by one of the partners he becomes a joint tort feasor, and is a party to the original wrong, and no lapse of time short of the statutory period of limitation will bar the injured parties' cause of action. 1 Bates on Part., secs. 338, 403, 405, 410, 411; Randall v. Meridith, 76 Texas, 680.

Appellant was a joint tort feasor with Joe Johnson in the wrongful sale and conversion of appellee's interest in the cattle in controversy, and is liable as an original wrongdoer, and appellee's delay in bringing his suit did not amount to a ratification of the wrong.

COLLARD, ASSOCIATE JUSTICE.—The amended petition was filed March 19, 1894. The original petition is not copied in the record and the amendment does not show when the original was filed, but defendant's trial amendment says that the original suit was brought August 30, 1890.

The amended petition, containing three counts, charges defendant W. B. Worsham with conversion of plaintiff's four-fifths of 126 head of cattle, all owned by him and one Joe Johnson, the latter owning one-fifth of the 126 head, many of which were branded V X on the left side. The first count charges that the cattle were owned jointly by plaintiff and Johnson in the proportions stated, the cattle consisting of 65 head of one-year-olds, 35 head of two-year-olds and 26 head of three and four-year-olds. That on the first day of October, 1888, defendant fraudulently combined with Johnson and induced him to sell and deliver to him, Worsham, without consideration, all of the cattle, without the knowledge or consent of plaintiff, and that Johnson then executed to defendant a bill of sale of all the cattle, the bill purporting to be executed by the firm of Johnson & Vignal; and that pursuant

thereto the cattle were delivered to defendant without the knowledge or consent of plaintiff; and that defendant unlawfully took possession of the same, sold and appropriated them to his own use without ever paying plaintiff anything therefor. The date of the sale and appropriation by defendant is not alleged. Wherefore plaintiff asks for his damages.

The second count avers that plaintiff and Johnson were the owners of the cattle which were then and there their partnership property and were in the joint possession of plaintiff and Johnson, owned in the same proportions as above alleged. The same fraudulent sale is alleged by Johnson to Vignal, to deprive plaintiff of his interest therein without his knowledge or consent, and that acting under the fraudulent sale defendant took possession of the cattle, sold, disposed of, appropriated and converted them to his own use. Prayer for damages.

The third count alleges joint ownership and possession of the same cattle by plaintiff and Johnson in the same proportion stated, the same fraudulent combination, and fraudulent sale by Johnson and delivery to defendant without plaintiff's knowledge or consent, and appropriation and conversion of the greater portion of them; that defendant has sold and disposed of the greater part of the cattle and has used and appropriated the whole amount received by him therefor to his own use and benefit. It is alleged that defendant still has a small number of the cattle in his possession, which number plaintiff is unable to definitely state. It is averred that Johnson is insolvent and was at the time of the alleged transactions. Plaintiff prays for his damages and for partition of the cattle unsold in the possession of defendant. No specific date is stated of the sale by defendant.

March 24, defendant demurred to the various counts in the amended petition; that the second and third counts set up a new cause of action and were barred by limitation of two years; filed a general denial and plea of statute of limitation of two years; and specially, that plaintiff and Johnson were partners and that defendant bought the cattle from Johnson, as of the firm, in good faith; that plaintiff never denied Johnson's right to sell the cattle, and knew of defendant's possession and sale of the cattle long before suit and before defendant paid for them and never asserted his claim thereto or to the purchase money thereof, but failed so to do until the institution of this suit, and that he ought not now to be heard to claim to the same.

March 24, 1894, plaintiff replied to the answer declaring that the amended petition set up no new cause of action, but reaffirmed the matter as originally declared on. Further replying, he says that the cattle still undisposed of by defendant and in his possession are in the joint possession of both, and the possession of defendant is the possession of plaintiff. October 8, 1894, the following agreement between the parties was filed: "It is hereby agreed that the plaintiff's original and first amended petitions as originally filed described the cattle in controversy as 'all branded V X on the left side' and that just before going to trial in this cause on this day the plaintiff's attorney was allowed to interline

said amended petition so as to read 'That many of said cattle were branded V X on the left side, which change in description relates to all the counts in plaintiff's amended petition, and that, in considering the question of limitation as to said cattle not correctly described before said interlineation, the same shall be considered the same as if such change had been made by an amendment filed this date. And it is also agreed that plaintiff, in his original and amended petitions, alleged said cattle to be about 105 head, whereas, by interlineation, he has changed the number to about 126 head, and that the same rule as to limitation shall apply to the increase of numbers, and that the defendant's plea to the jurisdiction as now filed be considered as filed to said changes the same as they could be filed to a trial amendment, and that defendant may file additional pleas of limitation during this trial." Pending the trial defendant filed a second trial amendment, October 9, 1894, alleging that the suit was erroneously brought for conversion of 105 head of cattle all branded V X, and no change was made as to the number or description of the cattle until October 8, 1894, as shown by the agreement, when plaintiff seeks to recover cattle branded other than V X and for 126 head of cattle, wherefore he pleads bar of the two years' statute of limitations as to the cattle not branded V X and as to the 21 head exceeding the 105 head originally sued for.

October 8, 1894, plaintiff filed trial amendment that the 21 head of cattle not included in the original petition were converted by defendant on the, to-wit, first day of November, 1892; that he cannot describe them more particularly than he has because the cattle were in the possession of defendant, and plaintiff has not had access thereto, etc.

September 11, 1894, the court heard and overruled all of defendant's demurrers to petitions then on file, and October 8, 1894, the court overruled defendant's demurrers contained in his trial amendment filed October 8, 1894.

October 9, 1894, upon return of verdict in favor of plaintiff for $869.76, the court rendered judgment for him for that amount and costs, except costs of former appeal, and interest at six per cent from date of judgment. Defendant has appealed, and insists on sixteen assignments of error.

*Opinion.*—The first assignment is that the court erred in overruling defendant's demurrers as contained in his second amended answer filed March 24, 1894. The second assignment is that the court erred in overruling defendant's objections to plaintiff's first trial amendment, for the reason that the objections, exceptions and demurrers were well taken. There is but one proposition under these two assignments, which is that the "amended petition setting up new matter or cause of action is subject to the plea of limitation as to such new matter."

We think the proposition should not be sustained as attempted to be applied in this case. The averments of the original petition as to time of conversion and the facts relied on to show conversion are not shown.

The averment that they were all branded V X on the left side is matter of description and was amendable, and the amendment in description did not constitute a new cause of action. The original petition only claimed that there were 105 head of cattle, and the suit as to the 21 head would be a new cause of action, but the trial amendment to meet defendant's plea of limitations shows that they were converted within two years before the first amended petition was filed. So the item for conversion of the 21 head was not barred by the two years' statute.

The date of the conversion is not alleged in the first amended petition. The date of sale to defendant is alleged, but not the date of conversion. When this case was before the Court of Appeals for the Second Supreme Judicial District it was held that the sale by one joint owner of the cattle would not be a conversion, but that the vendee would become a joint owner with the other cotenant, and other facts would be required to show a conversion. Worsham v. Vignal, 5 Texas Civ. App., 473, citing Trammell v. McDade, 29 Texas, 361, et seq., and other authorities. We believe the court announced the correct rule.

Appellant presents his sixth, seventh, ninth and thirteenth assignments of error together. The assignments respectively complain of the fourth and seventh paragraphs of the court's charge and the refusal of special charges added by defendant. The court's charge complained of requires the jury to find that the conversion and appropriation of the cattle by defendant must have been within two years prior to the filing of the petitions, original and amended, before they could find for plaintiff, as otherwise they should find for defendant on the plea of limitations. The court, following the decision of the Court of Civil Appeals, did not make the conversion of the cattle depend upon the alleged fraudulent combination and sale of Johnson to Worsham, but upon appropriation by Worsham of the cattle to his own use and benefit; and he instructed the jury that in considering the plea of limitation such conversion must have been within two years prior to the petitions to entitle plaintiff to recover. The testimony, as we think, without contradiction shows that Vignal and Johnson were joint owners of the cattle as distinguished from partnership owners; that Johnson sold the cattle to Worsham as alleged without plaintiff's knowledge or consent, and that Worsham knew, or ought to have known, of Vignal's interest and its character. The testimony shows that he sold all the cattle sold to him before the trial, except one steer; that he gave Johnson his note, non-negotiable, for them, and that he paid Johnson the entire amount of the note, ignoring plaintiff's interest in the cattle or the proceeds, and that he yet withholds all the proceeds of the sale from plaintiff and denies his right to them. The time of his sales of the cattle as his own, the time when the conversion was complete, is not definitely shown by the testimony. The court's charge under the facts and the law as announced by the court on the former appeal was correct. The seventh paragraph of the court's charge complained of, as to the conversion of the 21 head, was that they were not involved in the suit until the 8th day of October, 1894

(when the amended petition was filed), and that if they were converted by defendant more than two years before that date then, as to them, the verdict should be for defendant. This was correct.

The charge asked, that the jury could only find for plaintiff such cattle as were branded V X, as before seen, was not correct.

The third assignment of error objects to that part of the charge which submits to the jury the question of joint ownership of the cattle, upon the ground that the evidence did not warrant a charge upon the issue. Our opinion is that the evidence shows nothing but a joint ownership. The testimony of Johnson that he and Vignal were partners was not proof of the fact, as the facts stated by him did not show anything but a joint ownership. He testified by depositions: "I did own some cattle with John Vignal in the fall of 1888. I got sixty-two head in Hardeman County of B. Williams in the summer of 1888, and eighteen head from Wm. Flynn the same year, six head from Wm. Baker in Wilbarger County in the same year and five head from B. Johnson in Hardeman County, and thirty-five head from Tom Ferris in Hardeman County. I bought them. I bought them for myself. I bought sixty-five head for myself, the remainder I bought for myself and John Vignal. I bought in all 126 head of cattle; they were yearlings and two year olds. I don't know the number of each, but about one-half were yearlings; they were all steers. I paid an average of $10 per head. I paid for all of them $1303. I furnished $658 and John Vignal furnished $645."

Upon the same subject he testified on the stand: "I am the Joe Johnson who was at one time partner of John Vignal. I furnished $658 and John Vignal $645 of the money. I had bought 65 head of the cattle on my own account before I went in with John Vignal, but they had never been delivered, and then he put or had put with Wood & Co. $645 subject to my orders, and after that I bought the other cattle as stated in my depositions, and the most of the cattle were branded V X. I think it was 91 head that we branded V X. There was 126 head bought by us, 35 head of which we never put into the V X brand."

The testimony of John Vignal upon the point is as follows, by depositions: "I did, I owned them (the cattle) jointly with Joe Johnson. I got the cattle in Hardeman County, in 1888. Joe Johnson bought them for me and for himself. Joe Johnson bought 105 steer cattle. They were from one to four years old. I don't know the exact number of ones, twos, threes or fours. They were all steers. I placed in Joe Johnson's care $645 in money to buy these cattle with. I furnished the above sum of money. I don't know how much money Joe Johnson furnished in the buying of the cattle. I took about two car-loads of them —about 80 head—to Clay County, Texas, and placed them in Mr. W. B. Worsham's pasture. They were branded V X on the left side. It was my brand. The other cattle were afterwards taken to Worsham's pasture in Clay County and they were branded the same * * *. I

kept the cattle in W. B. Worsham's pasture in Clay County. I don't know where they are at. Johnson sold them to Worsham * * *. When we bought the cattle it was agreed between me and Johnson that I was to have control and management of the cattle, and was not to have any brand put on them but my own brand * * *. Joe Johnson and me never entered into any partnership. We only bought this one lot of cattle jointly." It was in proof that Vignal had the V X brand recorded in his name in Clay County October 22, 1888, no ear marks being given. There was no contract between Vignal and Johnson further than is shown by the foregoing, no agreement as to how they should hold the cattle, by what title, when they were to be sold, how the proceeds should be delivered, or when or how sales should be made. Vignal never held out Johnson as his partner to Worsham or anyone else, so far as is shown by the above testimony, and there is no proof that he ever did or said anything inducing the belief that Johnson and he were partners in the cattle.

We think that only a joint ownership is shown. That is clearly shown and there the testimony stops. Nothing else is shown which, by any of the tests of partnership, tends to prove that these men were anything more than joint owners of the cattle. So we conclude that there was not only evidence sufficient to warrant the charge of such ownership, but that there was no evidence at all of partnership. Buzard v. McAnulty, 77 Texas, 443. There was no agreement to become partners, nor any fact showing such an intent. 1 Bates' Law of Partnership, secs. 24, 26, 31. .

There are quite a number of assignments of error based upon the assumption that a partnership was shown by the testimony, addressed to the charge of the court defining partnership and other rulings upon the question of fraud by Worsham and Johnson and efforts by them to defraud Vignal of his interest in the cattle. According to our view of the case these questions do not arise; they are not in the case under the proof. They are based upon the assumption of partnership, and as there was no testimony authorizing a finding of the fact of partnership, the error assigned, if it exists, is harmless. A joint ownership only is shown, and this being true Johnson had no power to sell Vignal's interest in the cattle. In the absence of some proof tending to show partnership the court should have instructed the jury that no partnership was shown. Worsham is not shown to have been misled or deceived by Vignal as to the ownership of the cattle. He knew they belonged to Vignal and Johnson, but knew nothing, as coming from Vignal, that could induce him to believe that it was a partnership ownership. In this view of the case we are not called on to examine the rulings of the court on the question of partnership presented by appellant's assignments of error, except in the admission of testimony.

Vignal was permitted to state in testimony that he was not a partner with Johnson in the cattle, but that the ownership was joint. It is true, if the testimony made the issue of partnership or not Vignal should

not have been allowed to decide the issue by stating that the interest in the cattle was joint, as such a statement would be only his opinion on the question, involving a conclusion of law-upon the facts, which the jury alone under proper instructions should have been left to decide. But inasmuch as there was no testimony tending to evidence a partnership, and testimony only showing joint ownership, his opinion would be harmless and immaterial, and we should not reverse the judgment because of such opinion admitted in evidence.

The testimony would warrant the conclusion that Johnson sold the cattle to Worsham with the intention to deprive Vignal of his interest in them and that Worsham knew the fact. At the time of the sale by Johnson to Worsham, Johnson was insolvent and continued to be so to the time of the trial. Worsham had known Johnson since 1876. Johnson had worked for Worsham & Stevens in the cattle business in 1876 and 1877, was at the time of the trial working for the Worsham Cattle Company, and had been since 1885, and as foreman of the company since 1886. Worsham knew, and he testified that he knew Johnson was insolvent at the time Johnson sold him the cattle. Johnson sold him the cattle for his non-negotiable note, of date 8th November, 1888. payable two yeas after date, to Johnson & Vignal, for $1290, bearing ten per cent interest from date, which states: "This note is non-negotiable and is subject to all offsets that the said Worsham may have or may hereafter acquire against us or either of us." Vignal did not know Johnson was going to sell the cattle to Worsham. Worsham paid the note to Johnson by his check to him on bank for $1447.82, which Johnson collected, no part of which was ever paid or offered to be paid to Vignal. Worsham explains in his testimony that he made the note non-negotiable because he was afraid Vignal would beat him out of the costs of a suit for land in which he, Vignal, and others were parties, in which the latter had filed a disclaimer. Worsham afterwards compromised the suit and agreed to pay the costs. He took no judgment against Vignal for costs.

Johnson explains that he sold the cattle because Vignal was trying to "beat him" out of them, but there is no testimony explaining how or in what manner Vignal was trying to "beat him" out of the cattle, nothing besides the expression used by Johnson, except the recording of the V X brand as before stated. He testified that he sent Vignal word a short time after the sale to Worsham to meet him and he would settle with him, and he knows Vignal received the word. He says he was prepared to settle with him at that time. This must have been long before maturity of the note or its payment, as the interest on it at ten per cent, with the principal, when paid amounted to $1447.82. He testified, "There are a good many debts and old judgments against me. Mr. Worsham knew this when I sold him the cattle. When Mr. Worsham and I were on the trade for the cattle he told me he expected to get a judgment against Vignal for the costs in that land suit, and he wanted to buy the cattle so as to be able to protect himself against

Vignal. There was something said about this at the time of the sale. This was why the note Mr. Worsham gave me was made non-negotiable. When Mr. Worsham paid the note I did not pay any part of it to Vignal. I have never paid him anything for his part of the cattle. Vignal and I have never bought any cattle together except this one bunch. When I went to buy the cattle Mr. Worsham had Mr. Vignal's money and he placed it with Wood & Co. at Vernon to my credit and I drew it in payment of the cattle I bought * * *. I do not know why I do not pay Vignal for his part of the cattle and stop this litigation, but I reckon it is because I have not the money, or don't want to, or something of the kind."

This being the testimony we think there was testimony to warrant the charge upon the subject of the intention of Johnson to defraud Vignal in the sale of the cattle to Worsham, and his knowledge of such intention by the latter before the institution of the suit. The assignment of error number five to the charge now under consideration asserts that there was no evidence tending to show such intention on the part of Johnson at the time of the sale or knowledge of the same on the part of Worsham. We do not find the error in the charge as assigned. We find no error in admitting testimony of Johnson in response to questions of plaintiff as shown by bill of exceptions number one. It was legitimate testimony that he had never paid Vignal for any of the cattle or their proceeds, and the same may be said of the nine head. The court below admitted the testimony as showing his animus, and we do not find it was erroneous.

The court did not err in refusing to submit the special issues requested by defendant.

The charge of the court called for a general verdict. The special verdict on the questions requested was only to be rendered by the jury, in the event that they should find any sum for plaintiff.

The statute provides that a verdict shall be either a general or a special verdict and it would be irregular to submit a case so as to call for a general and a special verdict. Heflin v. Burns, 70 Texas, 345; Blum v. Rogers, 71 Texas, 676.

The special issues submitted for answer by the jury must embrace all issues in the case necessary to the judgment to be rendered. The special verdict in answer to issues asked by defendant would not have been sufficient of itself to authorize a proper judgment thereon by the court. Railway v. Finley, 79 Texas, 85.

It is discretionary with the trial court to submit a case upon special issues or not, and unless it clearly appear that the court has abused that discretion the appellate court will not revise its action. There was no abuse of that discretion in this case. Railway v. Finley, 79 Texas, supra; Cole v. Crawford, 69 Texas, 128.

We do not find that the verdict is for an excessive amount. The Court of Civil Appeals on the former appeal of this case decided that the conversion of the cattle would not occur by the mere sale of the

cattle by Johnson to Worsham, in case of joint ownership by Johnson and Vignal; that so long as Worsham owned the cattle he would be a joint owner with Vignal, merely a successor of Johnson's rights.

The testimony does not show when Worsham sold cattle nor precisely how many of them he has sold and appropriated. He testified that he did not sell any of them while they were under three years old; they were three years old and upwards when he sold them, and he says they were worth $15 or $16 dollars per head when he sold them, but he did not remember what he sold them for. As to the number of cattle sold and the time of sale, he testified: "I have sold and shipped out all of them that I could find except one steer, which I saw about one year ago, and except a few head of yearlings, probably four or five, that died soon after I bought them. Those I shipped I sent either to St. Louis or Chicago and they were sold for beef. I sold a few of the cattle to Major Dale in Clay County. I sold him, if I remember, ten or twelve head. They were delivered to him in November, 1892." This, at least, was less than two years (from March to November) before the amended petition asking damages for the 21 head in addition to the 105 head originally sued for. His testimony proceeds: "They were rough cattle and did not get fat enough for beef while I had them. I sold all of these cattle that I could find to Maj. Dale, that I had not previously shipped out. The boys afterwards found one steer which I spoke of before, and which I last saw about one year ago * * *. I shipped out some of these cattle before this suit was brought. There was quite a number of them left in 1890; do not remember just how many I shipped—All that were left after this suit was brought that I could find except those I sold to Maj. Dale, were the last I disposed of. I disposed of said cattle so sold by me as my own, and I appropriated the proceeds of all such sales to my own use and benefit * * *. I do not know the exact number of these cattle that I did ship out in all. My account of sales showed the number but such account of sales was destroyed by fire." The testimony is not definite as to the number of cattle sold and appropriated by Worsham. Johnson sold and delivered to him 117 head, about one-half of which belonged to plaintiff Vignal. Plaintiff's share of the cattle appropriated by Worsham, at their value at the time he sold them would, with interest, amount to considerably more than the amount of the verdict. If the 21 head for which defendant contends if the suit is barred by limitation of two years, be deducted from the 117 head sold to Worsham, plaintiff's half interest in them would be 48 head, which, at the highest price per head estimated by defendant when he sold them, with interest for only two years before the date of the judgment at six per cent, would amount to about $860, nearly the amount of the judgment, which was for $869.76; and if interest be estimated for three years the amount would be $906.24 at the date of the judgment. Under the facts it is impossible to say that the verdict is excessive or that it awards more than the correct amount of damages.

We find that the conversion was certainly complete when Worsham sold the cattle of his co-owner and appropriated the proceeds to his own use, and that it cann'ot be certainly ascertained from the testimony that it occurred at an earlier date.

None of the assignments of error insisted on by appellant ought to be sustained.

The judgment of the lower court is sustained.

*Affirmed.*