### ARRINGTON et al. v. McDANIEL et al.
#### (No. 11891.)

Court of Civil Appeals of Texas. Fort Worth.
Jan. 21, 1928.

Rehearing Denied March 3, 1928.

**1. Wills ⊕⇒601(8)—Under bequest of property to wife and named children, to be used for family until youngest child became of age, when property was to be divided, devisees took fee; clauses relating to division being precatory.**

Where testator bequeathed real and personal property to wife and named children, to be kept together and used by family until youngest child became of age, after which it was to be divided among named sons, giving other sons mill and gin, and daughter named amount of cash as her interest in land, fee-simple title to land was vested in wife and named children; other clauses in will being deemed merely precatory.

**2. Wills ⊕⇒782(12)—Testator having disposed only of his community interest, widow need not elect whether she would receive under will.**

Where testator's will evidenced intention to dispose only of his one-half interest in community estate, no burden was placed on his widow to elect whether she would receive under will or as community holder of property of herself and husband.

**3. Wills ⊕⇒577—Presumption is that testator intends to dispose only of his interest in community property.**

In construing will, presumption is that testator intended to dispose only of his interest in community estate, unless such construction is precluded from the language used.

**4. Executors and administrators ⊕⇒152—Defendant purchased land as executor or trustee, where consideration for repurchase, was release of notes and interest belonging to estate.**

Where executors of testator's estate conveyed land which had belonged to testator for recited cash consideration of $300 and vendor's lien notes for $1,000, since consideration paid for repurchase of land by defendant executor or trustee consisted of release of notes and ven-

dor's lien, which belonged to the estate, purchaser did not acquire title in individual capacity, and must be deemed to have purchased as executor or trustee.

**5. Executors and administrators ⊕⇒152—Defendant, not having executed oath as executor, but acting as such, was trustee for estate in repurchase of its land.**

Where executors conveyed land belonging to estate; and thereafter land was repurchased by one executor on consideration of release of notes and interest belonging to the estate, notwithstanding that purchaser thereof had never executed his oath as an executor, but had acted as such, he must be held to have been a trustee at least for the estate.

**6. Limitation of actions ⊕⇒100(7)—Limitation did not begin to run against heirs' cause of action against executor who had purchased estate property until heirs had knowledge of purchase.**

Where executors conveyed land belonging to estate, and thereafter land was repurchased by one executor, in trespass to try title by other heirs, limitation did not run as against heirs' cause of action against executor until there was a distinct repudiation of his trust, knowledge of which was brought home to heirs or to those under whom they claimed.

**7. Tenancy in common ⊕⇒14—Taking and recording deed by one tenant in common does not oust cotenant.**

The taking and recording of a deed by one tenant in common does not, as matter of law, operate as ouster of his cotenant.

**8. Executors and administrators ⊕⇒117—Executor, having sold timber off estate land, obligated himself to pay heirs' share therein.**

Where purchase of land once belonging to decedent's estate by one executor was deemed to have been in his capacity as executor or trustee, and not as an individual, in trespass to try title by heirs for possession of two-fifths of land and two-fifths of amount executor received for sale of timber, executor, having sold timber from land for named price, thereby obligated himself to pay to heirs two-fifths of amount thereof.

**9. Tenancy in common ⊕⇒43—Tenant in common may sell marketable timber, and purchaser, without notice of rights of cotenants, takes good title as against them.**

A tenant in common may sell marketable timber growing on land so long as he does not commit waste, and purchaser, without notice of rights of other cotenants, takes good title against them; their remedy being to compel seller to account.

**10. Executors and administrators ⊕⇒142—Executor selling estate property, having accepted piano at $300 valuation, could not deny it was of that cash value.**

Where executor, in sale of land belonging to estate, accepted in part payment thereof a piano at a cash valuation of $300, he could not deny, when sued by heirs in trespass to try title, that piano was of cash value as noted in deed.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Executors and administrators ⬸117—Heirs held entitled to 10 per cent. interest on price of timber and value of use of land during·defendant's control as executor or trustee (Rev. St. 1925, art. 4189).**

Where heirs, claiming two-fifths interest in land, sued for its possession and two-fifths of amount defendant as executor or trustee received from sale of timber thereon, allowance, under Rev. St. 1925, art. 4189, of 10 per cent. interest on amounts awarded heirs for their share in the purchase price of timber and their interest in net amount awarded for use of land during defendant's control was proper.

**12. Guardian and ward ⬸54—Interest is recoverable under statute, although not specifically prayed for (Rev. St. 1925, art. 4189).**

Under Rev. St. 1925, art. 4189, providing, if guardian neglects to invest surplus money at interest, he shall be liable at highest legal rate, interest is recoverable, though it is not specifically prayed for.

**13. Executors and administrators ⬸131—Evidence authorized finding that two-fifths rental value of estate land during executor's occupancy amounted to $1,800.**

Where heirs sued for possession of two-fifths of land and two-fifths of amount executor or trustee received from sale of timber, evidence *held* to authorize finding that two-fifths of rental value of land during executor's occupancy amounted to $1,800 only instead of $2,970, as found by the jury.

**14. Witnesses ⬸139(10)—Plaintiffs not having waived statute, testimony of defendant executor or trustee that land not part of decedent estate was conveyed to heir was inadmissible (Vernon's Ann. Civ. St. 1925, art. 3716).**

Where testator's will provided that land was to be equally divided between defendant and three named brothers, in trespass to try title, where defendant executor or trustee did not claim that plaintiffs, by putting him on the stand as their own witness, and inquiring as to whether he had ever paid his sister or brother any part of proceeds received for sale of timber, waived provisions of Vernon's Ann. Civ. St. 1925, art. 3716, providing, in actions against executors, neither party may testify as to transactions with testator, defendant could not testify that land not part of testator's estate was conveyed to one brother as his part of his father's estate.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Suit by Mrs. Jessie McDaniel and others against J. E. Arrington and others. From a judgment for the plaintiffs, defendants appeal. Plaintiffs having agreed to the remittitur specified, judgment is affirmed.

F. E. Johnson, of Cleburne, and Mantooth & Denman, of Lufkin, for appellants.

Hamp P. Abney, of Sherman, and J. M. Moore, of Cleburne, for appellees.

BUCK, J. On October 13, 1891, J. B. Arrington died in Angelina county, Tex., leaving surviving him his wife, Telitha Arrington, a daughter, Arimenta Abney, and four sons, to wit, J. E., O. J., or Orange, P. B., and E. B. Arrington. At the time of J. B. Arrington's death, he and his wife owned as community property certain lands in Angelina county and certain personal property. J. B. Arrington left a will as follows:

"State of Texas, County of Angelina:

"Be it remembered that I, J. B. Arrington of the state and county aforesaid, considering the uncertainty of this life and being of sound mind and memory, do make, declare, and publish this my last will and testament.

"First. It is my desire that all my just debts be paid with convenient speed.

"Second. I give and bequeath all my property both real and personal to my wife, Telitha Arrington and my children, J. E., O. J., P. B., E. B. and Arimenta Abney, and J. E. Arrington, all of which I desire shall be kept together and used by the family until my youngest child shall become of age, after which it is my desire that the same be divided as follows: That my wife, Telitha Arrington, shall own and control the entire estate, both real and personal as long as she lives, with power to sell anything belonging to the estate, and make title to the same, she thinking the same to be of interest to the family.

"Third. I desire that all of the real estate be equally divided among J. E. Arrington, O. J. Arrington, P. B. Arrington, E. B. Arrington.

"Fourth. I desire that my three youngest sons, O. J. Arrington, P. B. Arrington and E. B. Arrington have the mill and gin.

"Fifth. I desire that my daughter, Arimenta Abney to have two hundred and forty dollars as her interest in the real estate and also an equal interest in the personal estate.

"Sixth. I do hereby nominate and appoint my beloved wife, Telitha, and son, J. E. Arrington, to be the executors of this my last will and testament. It is my desire that my executors dispose of any or all of my said property at such prices and upon such conditions as they may see proper for the purpose of supporting, educating and maintaining said minor children and without any orders of court whatever.

"Seventh. It is my desire that my said executors be required to do nothing further than to file and have probated this my last will and testament and subscribe to the oath as executors, without having to give any bond whatever, and without having to procure any further orders whatever from the probate court to dispose of my said property as directed in this my last will and testament.

"It is my desire that each of my said minors, sons, who have not had a horse, bridle and saddle, the executors must see that they have one, furnished, when they arrive at a sufficient age to use and attend to one."

The heirs of Arimenta Arrington Abney and O. J. Arrington filed suit in the form of trespass to try title against J. E. Arrington. The lands mentioned in the petition included some, if not all, of the old homestead in An-

gelina county, two farms in Johnson county, and a lot in Cleburne, and 496 acres in Jones county. The court found that the lands in Johnson county and Jones county had been purchased by J. E. Arrington long subsequent to the death of his father, and not with funds held by him as executor or trustee of his father's estate. Judgment was rendered for J. E. Arrington as to these lands, and no complaint is made of this action of the court. The only lands involved in this appeal are some 350 acres, a part of the old homestead.

The widow, Telitha Arrington, and J. E. Arrington, as executors, and O. J. Arrington, joined by his wife, Felicia, and P. B. Arrington, on October 24, 1899, conveyed the land in Angelina county to R. B. McFadden. There seems to be some confusion as to the acreage described in this deed and in the subsequent deed by McFadden to J. E. Arrington, former deeds describing the land as being 350 acres, and the deed to McFadden describing it as being only 300 acres. This apparent discrepancy does not become important, because, if there were 50 acres of land left out of the deed to McFadden, then that land remained in the estate of J. B. Arrington. The deed from the executors to McFadden recited a cash consideration of $300 and vendor's lien notes for $1,000.

Subsequently, as testified by J. E. Arrington, McFadden sold the land to a man named A. P. Du Bose. Du Bose assumed the payment of the vendor's lien notes. J. E. Arrington testified that Du Bose could not pay the notes, and deeded the land to him, but that the deed was subsequently stolen from his house. On March 23, 1915, J. E. Arrington secured from R. B. McFadden and wife a deed to the land theretofore conveyed to him, the consideration being recited as $1,300 cash in hand paid, but J. E. Arrington testified that the real consideration was the cancellation of the notes aggregating $1,000 and interest. J. E. Arrington testified that he gave his note in the sum of $500 each to his brothers, P. B. and E. B. Arrington; that these were the only two heirs who were entitled to any part of the estate. These two brothers conveyed to J. E. Arrington whatever interest they had in the land, naming it a one-half interest. Defendant claimed that he had theretofore conveyed to his brother Orange J. Arrington a tract of 100 acres as the vendees' part of the estate; that his sister, Arimenta, was entitled to $240 cash as her part of the real estate. In February, 1916, J. E. Arrington sold the timber off the land in Angelina county to the Southern Pine & Lumber Company for $11,000.

Mrs. Telitha Arrington, O. J. Arrington, and Mrs. Abney all died intestate prior to filing of suit. The heirs of Mrs. Abney and the heirs of O. J. Arrington, on the 26th day of April, 1926, sued J. E. Arrington for the possession of two-fifths of the land in Angelina county and two-fifths of the amount he had received from the sale of the timber, and two-fifths of the cash payment of $300 paid by McFadden in the form of a piano, which defendant testified he had at that time in his home at Lufkin, and two-fifths of other lands eliminated from this appeal.

The cause was submitted to a jury on three issues, which, with their answers, are as follows:

"(1) What amount of rent was collected by the defendant J. E. Arrington from the land in Angelina county, Tex., involved in this suit, since the year 1902? Ans. $2,970.

"(2) What amount of money did J. E. Arrington receive and collect for timber sold from the lands involved in this suit lying in Angelina county, Tex.? Ans. $11,000.

"(3) What amount of taxes has J. E. Arrington paid on the lands in Angelina county, Tex., involved in this suit, since the year 1902? Ans. $800."

The court found that the sum of $2,970, found by the jury to have been collected by the defendant as rents on the lands, had been held by him as executor of said will, and had never been invested for the benefit of the heirs of J. B. Arrington, except that the defendant had paid taxes on said lands in the sum of $800, as found by the jury, and had made improvements on said lands in Angelina county to the extent of $1,000, leaving a balance due the heirs of $1,170, which, together with interest thereon at the highest rate provided by law, to wit, 10 per cent. per annum for the average time, amounted to $1,404, making a net amount with interest now due all of said heirs in the sum of $2,574. From this judgment the defendant has prosecuted this appeal.

### Opinion.

[1] We will not take up the propositions in the order they are given in appellants' brief, but will discuss them all. The will of J. B. Arrington apparently devised his interest in the land in controversy to his wife and children, vesting in them a fee-simple title to the land. The second paragraph of the will gives and bequeaths all of the testator's property to his wife and children. He provides that his wife shall own and control the entire estate, with power to sell any part of the estate and make title to the same, if she thinks said sale shall be to the interest of the family. If there be any conflict between the clause which vests the fee-simple title to the testator's property in his wife and children and other clauses in the will which show a desire as to how the property should be divided among his children, we think the clause vesting a fee-simple title should prevail, and other clauses be deemed merely precatory. We think the language of the will merely shows that it was the in-

tention of the testator to vest title to his part of the estate in his wife and children, and that, as to other directions given, such as that his three youngest sons should have the mill and gin, and his daughter a cash consideration for her interest in the real estate, and his minor sons each to have a horse, bridle, and saddle, were merely directions to his executors, left to their discretion in fulfilling his evident desires. See Weller v. Weller, 22 Tex. Civ. App. 247, 54 S. W. 652, in which Justice Pleasants of the Galveston Court of Civil Appeals very clearly states the rule governing the construction of this phase of wills. The court said:

"Bearing in mind that the supreme rule of construction of wills is the ascertainment of the intentions of the testator, and to this end we should consider the condition of his estate at the time of making his will, the circumstances under which it was made, and the primary object of the testator in executing the instrument, and for this purpose technical words and terms in conflict with the evident intention of the testator may be disregarded, and that construction adopted which seems to conform more closely with his main purpose in executing the will, we think the trial court correctly held that the will in question vested a fee-simple estate in Mrs. Emma Catherine Weller"—citing cases.

In Gifford v. Choate, 100 Mass. 346, it is held that an absolute power of disposal in the first taker renders a subsequent limitation repugnant and void; while Chief Justice Parsons, in Ide v. Ide, 5 Mass. 500, says:

"Whenever, therefore, it is the clear intention of the testator that the devisee shall have an absolute property in the estate devised, a limitation over must be void, because it is inconsistent with the absolute property supposed in the first devisee."

See Speair v. Ligon, 59 Tex. 233. See Norton v. Smith (Tex. Civ. App.) 227 S. W. 542, by the Beaumont Court of Civil Appeals.

We are of the opinion that the facts in this case lend support to the conclusion that the testator intended to convey the fee-simple title to his wife and children in the lands owned by him at the time of his death, yet with the authority vested in his wife to sell any part of said lands for the support of his widow and minor children. He evidently was a man of limited means. He had paid from $1 to $3 an acre for the land he owned. Three of his children were minors, and he wanted to make provision so that his widow and minor children could be supported, as far as possible, out of his estate, and to do this he vested discretion in his wife to sell any part thereof. Perhaps it would be persuasive to show the construction placed on the terms of the will by his widow and the executors, to mention that the widow ignored some of the provisions of the will which we deem precatory or directory only, in that she sold the mill and gin property,

instead of giving them to her three youngest sons, and invested the money in a business which she and J. E. Arrington, hereinafter mentioned as Dr. Arrington, conducted at Wootan Wells. There is no evidence that she, as an individual, or that she and Dr. Arrington as executors, gave to Arimenta Abney the $240 mentioned in the will as Arimenta's part of the real estate. There is no evidence in the record that a horse, bridle, and saddle were given to the sons who were minors at the time of their father's death. Arimenta was married at the time of her father's death, and could have received any part of her father's estate which her mother and Dr. Arrington thought might be awarded her.

[2, 3] We are further of the opinion that by the will it was the evident intention of the testator to dispose only of his one-half interest in the community estate, and that there was no burden placed upon the widow to elect whether she should receive under the will or as a community holder of the property of herself and husband. It is one of the canons of construction of wills that the presumption is that the testator intends to dispose only of his interest in the community estate, unless there is language used that precludes such construction. See Carroll v. Carroll, 20 Tex. 732; Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Crosson v. Dwyer, 9 Tex. Civ. App. 482, 30 S. W. 929, writ of error refused; Moss v. Helsley, 60 Tex. 426.

[4, 5] It was contended by appellant in the court below, and is so contended in his brief, that he had the right to purchase from McFadden the land sold to him, and in so doing he acquired the title to said land individually, and not as executor or trustee. The testimony of Dr. Arrington himself was that McFadden paid, and agreed to pay, $1,300 for the land purchased, and he gave a piano of the stated value of $300 as the down payment. He was not able to pay the notes for $1,000, and all that Dr. Arrington did was to release these notes. Therefore the consideration that he paid for the repurchase of the land consisted of notes and interest belonging to the estate, and he must be held to have purchased the land as an executor or trustee and not individually. Dr. Arrington states that he did not execute the oath of an executor, but he acted as such, and so testified, and must be held to have been a trustee at any rate. See Everett v. Henry, 67 Tex. 402, 3 S. W. 566; Nabours v. McCord, 100 Tex. 456, 100 S. W. 1152; McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144; Nabours v. McCord, 36 Tex. Civ. App. 504, 75 S. W. 827; Perry on Trust, p. 197.; Van Orden v. Pitts (Tex. Com. App.) 206 S. W. 830, by the Commission of Appeals.

[6, 7] Appellant pleaded in the court below the statutes of limitation. Limitation would

not begin to run in behalf of J. E. Arrington against the rights of appellees until there was a distinct repudiation of his trust and a knowledge of it brought home to plaintiffs, or to those under whom they claimed. See Stuart v. Meyer (Tex. Civ. App.) 196 S. W. 615, by this court, writ of error refused; Neyland v. Bendy, 69 Tex. 711, 7 S. W. 497; Cole v. Noble, 63 Tex. 432; Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 961; 7 R. C. L. 851, § 44, 851, 852, § 45; Stephens v. House, 112 Tex. 459, 248 S. W. 30. The taking and recording of a deed by one tenant in common does not as a matter of law operate as an ouster of his cotenant. See authorities above cited.

[8, 9] The appellant, having sold the timber off the land for $11,000, obligated himself to pay to appellees two-fifths of this amount. A tenant in common has a right to sell marketable timber growing on the land so long as he does not commit waste; and the purchaser, especially without notice of the right of other cotenants, takes a good title against the other cotenants; their remedy being to compel the seller to account for the proceeds. Gillum v. St. L. A. & T. Ry. Co., 5 Tex. Civ. App. 338, 23 S. W. 717; Collier v. Wm. Cameron Lumber Co., 55 Tex. Civ. App. 153, 117 S. W. 915. In the last-cited case, the San Antonio Court of Civil Appeals, in discussing the liability of the purchaser of timber to the other cotenants, held that a cotenant selling the growing timber on land was liable to his cotenants for their interest in the same, and also that the purchaser with knowledge of the cotenancy was likewise liable. See Worsham v. Vignal, 5 Tex. Civ. App. 471, 24 S. W. 562, by this court; Trammell v. McDade, 29 Tex. 360; Worsham v. Vignal, 14 Tex. Civ. App. 324, 37 S. W. 17; Cosgriff v. Dewey, 164 N. Y. 1, 58 N. E. 1, 79 Am. St. Rep. 620.

[10] We do not think there was any error in rendering judgment against appellant for the $300, the value placed upon the piano, taken as a cash payment from McFadden to the land in controversy. The evidence shows that appellant took the piano at a valuation of $300, and that he still had the piano in his possession at his home at the time of the trial. We do not think he may be permitted to deny that the piano was of the cash value as noted in the deed.

[11, 12] The court allowed interest at 10 per cent. on the amounts awarded plaintiffs below for their interest in the purchase price of the timber cut off the land, and their interest in the net amount awarded for use of the land during the years of appellant's control thereof. Article 4189, Rev. Civ. Statutes, under the subject of Guardian and Ward, provides:

"If the guardian neglects to invest or loan surplus money on hand at interest when he can do so by the use of reasonable diligence, he shall be liable for the principal and also for the high-est legal rate of interest upon such principal for the time he so neglects to invest or loan the same."

This statute has been held to apply to a trustee or to an executor or administrator of an estate as well as to a guardian. See Van Orden v. Pitts (Tex. Com. App.) 206 S. W. 830, by the Commission of Appeals. We also think that interest is recoverable under this statute, though not specifically prayed for. Plaintiffs prayed for recovery, "and for such other and further relief to which they may be entitled at law or in equity." In City of Houston v. Lubbock, 35 Tex. Civ. App. 106, 79 S. W. 851, writ of error refused, the Court of Civil Appeals held that a petition to recover salary as policeman, setting out the facts and praying for general relief, authorized allowance of interest. See Ft. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834; Thomas v. Bonnie Bros., 66 Tex. 635, 2 S. W. 724; Slaughter v. Coke County, 34 Tex. Civ. App. 598, 79 S. W. 863.

[13] The contention is made by appellant that the evidence did not warrant a finding by the jury that the value of the use of the land was $2,970, and that this amount accrued to, and was received by, appellant from such use. Mrs. Felicia Arrington, one of the plaintiffs, and widow of Orange J. Arrington, testified:

"As to how much land there was in cultivation of the J. B. Arrington property, there was about 60 or 75 acres. * * * As to whether I know what was the reasonable cash rental value of the crops raised on that land, and lands similar to it, in that country at that time, I think about $2 or about $3 an acre, or something like that. I knew at that time what it was. Cotton and corn was raised on that land. Mr. J. E. Arrington has had tenants on that place. There has been different tenants on there from year to year. J. E. Arrington superintended and had charge of the land at all times. I suppose Mr. J. E. Arrington collected the rents. He had charge of it, and he rented the land from time to time. I know that J. E. Arrington collected the rents. I have had a conversation with the tenants with reference to the rents; I never did have a conversation with Dr. J. E. Arrington with reference to the rents. I couldn't say about how much cotton per acre this land in cultivation would produce."

Appellant testified that he took possession of the land about 1902 and fenced it, and had retained possession ever since; that he claimed said land as his own; that there are some 30 or 40 acres of said land in cultivation, from which he sometimes got one bale of cotton and sometimes two, and sometimes not that much; that last year he got about 300 pounds of seed cotton off of it; that sometimes the rents did not pay the taxes. If there were 60 acres in cultivation, taking Mrs. Arrington's lowest estimate, and the crops raised on the land, or the rentals received therefrom were of the value of $3

an acre, then the rent would amount to $180 a year. Appellant had had possession of the land some 25 years, from 1902. This would make the total rent received $4,500, two-fifths of which would be $1,800. The question propounded to the jury was:

"What amount of rent was collected by the defendant J. E. Arrington from the land in Angelina county, Tex., involved in this suit, since the year 1902."

The answer is $2,970. There is nothing in the question that authorized the jury to include interest, and we are persuaded that $1,800 is the largest amount for which the evidence justifies a judgment for rents. Therefore we will reform the judgment, allowing only $1,800 for the rental value of the land during the 25 years of use, instead of $2,970.

We think the jury were warranted in finding that J. E. Arrington had paid taxes on the land not in excess of $800. He testified that his tax receipts for various years showed amounts from $5.34 to $7.23.

[14] During the trial, and while the appellant was on the stand, there was sought to be introduced a deed dated May 20, 1895, and filed for record in Angelina county on April 25, 1926, conveying to O. J. Arrington 100 acres of land, and purported to be executed by "Tabitha Arrington and J. E. Arrington, executors of the last will and testament of J. B. Arrington," but apparently signed by Telitha Arrington and J. E. Arrington. If the deed had been admitted in evidence, and the witness had been allowed to testify with reference thereto, he would have testified that the 100 acres, apparently no part of J. B. Arrington's estate, was conveyed to O. J. Arrington as his part of the estate of his father, J. B. Arrington. The deed recites as consideration the execution by the grantee of one vendor's lien note in the sum of $225. If permitted to testify, Dr. Arrington would have testified that it was not the intention that said note should ever be paid, and that it was never paid. Objection was made to all of this evidence on the ground that its admission was in violation of article 3716, Vernon's Rev. Civ. Statutes of 1925, which reads as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Neither in appellant's pleading, nor in his briefs, nor in the bills of exception reserving this alleged error, is any contention made that, by putting Dr. Arrington on the stand as their own witness, and inquiring of him as to whether he had ever paid his sister or her heirs, or his brother or his heirs, any part of the proceeds received for the sale of timber, that plaintiff waived the provisions of this article of the statute. The only contention shown in the bills of exception is that the statute did not apply, because the defendant was not being sued as an executor, but individually. We are of the opinion that appellant will be confined to the reasons given in the court below for the admission of this evidence. Fulton v. Bayne, 18 Tex. 50–57; Jones v. Cavasos, 29 Tex. 429.

At least the majority are of the opinion that the admission of the testimony offered would be in violation of the concluding sentence in article 3716, to wit:

"And the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

This was a suit by the heirs of O. J. Arrington against defendant below, and the defendant would not be permitted to testify as to any transaction had by him with the deceased. If the deed should be held admissible, and not in violation of the statute, the deed was merely a conveyance for a valuable consideration, to wit, a vendor's lien note for $225, and did not tend to support the payment to O. J. Arrington of his interest in the estate. It took the oral testimony offered, in order to make it pertinent.

We find no reversible error, and, appellees' counsel having agreed to the remittitur hereinabove specified, the judgment of the court below is affirmed. The costs of appeal will be adjudged against appellees.