LEWIS ROGERS, APPELLANT, v. JOSEPH G. LINDSEY, HENRY S. ATWOOD, AND JOHN S. BENNETT.

The following paper, viz.
" The President or Cashier of the Planters and Merchants Bank will please hold, subject to the order of Mr. J. G. Lindsey, all the debts referred to in the inclosed letter from Mr. McFarlin, except the two drafts of McCollier, Minge, upon the Messrs. Ellicotts, of Baltimore, which, when collected, please place to my credit" — imports an authority to Lindsey to control the settlement and collection of these several demands; but not necessarily a transfer of the title to or interest in them.
The circumstances of the case favor this construction. Lindsey had become personally responsible for a sum of money, which these debts were intended in part to meet. As an honest transaction, it would answer all purposes, if he had only a power to collect the debts.
Where Lindsey, under this power, assigned an interest in one of these judgments, and the bill charged that the assignee knew of the interest of the original creditor, which the assignee, in his answer, did not deny, he failed to bring himself within the rules which protect a purchaser for a valuable consideration without notice, and his claim must be set aside.
Lindsey's having assigned this judgment to a third person, and then taken a reassignment of it, does not vary the case. He stands then in his original position.

THIS was an appeal from the Circuit Court of the United States for the Southern District of Alabama.

The bill was filed by Rogers against Lindsey, Atwood, and Bennett, under the circumstances mentioned in the opinion of the court, and which it is not necessary to repeat.

The cause was heard upon the bill, answers, exhibits, and proofs, in the said District Court, on the 17th of April, 1850, and the court being of opinion that the plaintiff, Rogers, by his contract with the defendant, Lindsey, had assigned and transferred the judgment in the said court, in favor of Rogers & Gray against John S. Bennett, to said Lindsey, and that he, Lindsey, and the assignees under him, were entitled to the money made thereon, ordered and decreed that the plaintiff's bill be dismissed, with costs.

Rogers, the complainant, appealed to this court.

It was argued by *Mr. Crittenden* (Attorney-General) and *Mr. Chilton,* for the appellant, and *Mr. J. A. Campbell,* for the appellee.

The arguments of the respective counsel were so much connected with the facts and circumstances of the case, that it is impossible to narrate them without protracting this report to an inconvenient length.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Southern District of Alabama.

Lewis Rogers, the appellant, and complainant below, was one of the firm of Rogers & Gray, doing business in the city of Richmond in 1836, and in the course of their business purchased of Joseph G. Lindsey, one of the defendants, a large amount of bills of exchange on the house of Goodman, Miller & Co., of the city of Mobile, of which about the sum of $20,000 was unpaid, and the bills protested. Subsequently, in 1837, a settlement was effected with the firm at Mobile, and payment received in several promissory notes, all of which were indorsed by Lindsey. Among these notes was one made by Bissell & Carville, a business firm in Alabama, dated 20th April, 1837, and indorsed by John S. Bennett, payable 1st January, 1838, for $3,297.27, and which was also indorsed by Goodman, Miller & Co., and Lindsey. This note, and a large amount of the paper thus received in discharge of the debt of $20,000, was dishonored at maturity, and duly protested, and judgments recovered against the several parties liable, in the Circuit Court of the United States in the Southern District of Alabama. The judgment recovered March, 1840, against Bennett, on the note of Bissell & Carville, amounted to $3,875. About this time the partnership of Rogers & Gray was dissolved, and the effects assigned to Rogers, the complainant.

In June, 1840, while the securities, taken in payment of the balance of $20,000 due to the firm of Rogers & Gray, stood in this condition, Lindsey came to the city of Richmond, and made a proposition for the settlement of his liabilities as indorser upon them. They had been left with the Planters and Merchants Bank of Mobile, for collection, and judgments recovered upon them as stated. Lindsey represented that all, or nearly all the parties except himself upon the paper were insolvent, and that little, if any thing, could be realized on the judgments. And he proposed to take them and give a note for $20,000, made by himself, and indorsed by four other persons, citizens of Alabama, who he represented were responsible, and would pay the note at maturity, if Rogers would make a new advance

to him of $10,000 on the note of one Hudgings, a citizen of Virginia.

Upon the faith of these representations, and after some inquiries into the responsibility of the parties, Rogers agreed to the proposition, and took the note of $20,000, which was payable the first of January thereafter, and advanced the $10,000 on the Hudgings note; and at the same time gave to Lindsey the following writing: —

" The President or Cashier of the Planters and Merchants Bank will please hold, subject to the order of Mr. J. G. Lindsey all the debts referred to in the inclosed letter from Mr. McFarlin, except the two drafts of McCollier Minge upon the Messrs. Ellicotts, of Baltimore, which, when collected, please place to my credit." 13th June, 1840.

The list of debts referred to in the letter of McFarlin were the securities that had been left with the bank at Mobile by Rogers for collection, and which had passed into judgments, as already stated.

When this note of $20,000 fell due, on the 1st of January, 1840, it was dishonored, and the paper duly protested. This note has never been paid.

Lindsey, after receiving the authority to control the securities and judgments in the bank at Mobile, returned, and made collections out of them to the amount of between $3,000 and $4,000.

Besides this amount, he has collected the judgment against Bennett to the amount of $6,292.66, principal and interest, that being the amount due at the date of the collection by the marshal, on the execution, June 5th, 1848. The judgment had been recovered March, 1840, and execution issued returnable November term following. An *alias* was issued 31st January, 1842, returnable March term following; and a *pluries* 24th December, 1842; a second and third, January and March, 1844; and a fourth and fifth, March, 1845, and April, 1848, on the last of which the sale took place of the property of Bennett.

The execution had been delayed by proceedings in the courts to stay the sale.

This bill was filed in the court below to arrest this $6,292.66, in the hands of the marshal, Rogers claiming that the money belongs to him. It has been brought into court, and awaits the final decree in the cause.

On the 24th December, 1842, Lindsey petitioned for the benefit of the Bankrupt Act, passed August 19th, 1841, and obtained his discharge on the 2d May, 1843.

None of the securities or judgments that he received from Rogers in June, 1840, at the time he gave him the note of

$20,000, is found in the list of his assets. The only allusion to them is an obscure reference in his list of creditors to the note of Bissell & Carville, which he says was given to C. D. Hunter as security for a debt due him.

The ground upon which Rogers claims that he is entitled to the money collected on the judgment against Bennett, is: 1. That according to the agreement with Lindsey, at the time he took the note of $20,000, it was not intended to vest in the latter any interest in the securities and judgments that had been left in the Planters and Merchants Bank at Mobile, for collection, but only to confer an authority upon him to take charge of the settlement and collection of the same, so that the proceeds might be applied to the payment of the note. In other words, that there was no assignment of these judgments intended, but a power to settle and convert them into money for the purpose stated, as Lindsey's residence in Alabama enabled him to give his personal attention to the business; and as he was deeply interested in realizing the payment of them, as he was on all the securities.

2. That admitting there had been an absolute assignment to Lindsey, and that it was so intended, still the complainant is entitled to arrest the money in the hands of the marshal, and have it applied to his debt, on the ground that it was obtained by false representations, both in respect to the value of these judgments, Lindsey representing that they were worthless, and also in respect to the solvency and responsibility of the sureties upon the note of $20,000.

On the part of Lindsey, it is insisted, that this note was given on the express condition that the judgments in the bank at Mobile were to be assigned absolutely to him for his own benefit; and that no fraudulent representations, as alleged, were made by him at the time.

The first question must depend upon the effect of the written instrument that passed between the parties as the result of the negotiation between them, as we have no other evidence on this branch of the case, except the allegations in the bill and answer. And, on looking at that instrument, we are satisfied that, upon a fair construction, it imports an authority to Lindsey to control the settlement and collection of these several demands; but not necessarily a transfer of the title to, or interest in, them.

This interpretation satisfies the words of the instrument; and there is nothing in the transaction itself, or in the relation in which the parties stood to each other, that should induce the court to give it a strained construction in favor of this defendant.

If a transfer of the interest had been contemplated, as the in-

strument was drawn for the purpose of carrying into effect the agreement and understanding of the parties, it is surprising that words importing an assignment are altogether omitted, and those importing only an authority over the list of judgments, used. It would have been most natural to have drawn an assignment in terms. Nor do we perceive that it could have been of any material importance to Lindsey to have stipulated for a transfer. The debt of $20,000 was his, and it would fall due in six months, and the purpose of giving this note as set up at the time, was to get some delay, so as to be able to realize something out of the securities in the bank at Mobile. And whether he, therefore, took a transfer of them, or a full authority to settle and collect them, would seem, in view of any honest purpose, a matter more of form than substance.

Our conclusion, therefore, is, that Lindsey took no interest in these judgments, as assignee, by operation of the written directions given to the Planters and Merchants Bank, by Rogers, on the 13th June, 1840 ; nor is there any evidence in the case leading to that conclusion.

Having arrived at this result, it is unimportant to inquire into the question of fraud relied on as vitiating the assignment upon the assumption that one had been established. There is certainly very strong grounds for doubting as to the *bona fides* of the transaction on the part of Lindsey.

The bill states that he represented the sureties upon the note of $20,000 as men of undoubted means, and who would not allow their paper to be dishonored, and that, if he did not take it up at maturity, they would.

This Lindsey substantially admits in his answer. And yet, the note was dishonored, and no portion of it paid by these sureties, and, as is apparent from the evidence, the demand could not have been collected by force of law. It is unimportant, however, to pursue this branch of the case.

The next and only remaining question in the case is, in respect to an interest set up by the defendant, Atwood, in this judgment against Bennett. He claims an interest to the amount of $2500, by an assignment from Lindsey, since his discharge under the Bankrupt Act, some time in the year 1843 or 1844, by way of securing the payment of an old debt due before the proceedings under that act.

The bill charges, that Atwood knew Lindsey had obtained the control of the judgment against Bennett by false representations ; and that he conspired with him to consummate the fraud thus committed upon the complainant.

This allegation is not met and denied in the answer. Nor is there any denial of knowledge that Lindsey had obtained no

interest in, or title to, the judgment from the plaintiffs in the same, or from Rogers the complainant. He says he does not remember that he ever saw any evidence of title to the judgment in Lindsey from Rogers & Gray, the plaintiffs, or from either of them, but avers, that he knew he had a title to the same from one Hunter. Neither does Atwood set up in his answer that he obtained the assignment of the interest he claims in the judgment *bonâ fide,* and without notice of the title of the complainant.

Under these circumstances, and in view of the nature of the defence set up by Atwood, it is quite clear he does not bring himself within the rule in equity which protects the title of a purchaser without notice. The bill virtually charged him with notice of the complainant's interest in the judgment, for the purpose of invalidating any claim that he might set up to the same under the assignment; and in order to protect himself, and to show that he was not in privity with Lindsey, he was bound to aver in his answer, that the purchase was made for a valuable consideration without notice.

Neither can he protect himself under the averment in the answer, that Lindsey obtained a title to the judgment from Hunter.

The facts are, that Hunter, in the Fall of 1841, took an assignment of this judgment from Lindsey, in consideration of a lot of land in Wilcox county, Alabama; and that in the Spring of 1844 he reassigned the same, and took Lindsey's note for the demand. Lindsey, being the original party to the fraud, is disabled from setting up this title of Hunter, conceding it to be a good one against the complainant. The reassignment clothes him with no better title than he possessed when he assigned the judgment to Hunter.

A purchaser with notice may protect himself by obtaining the title of a purchaser for a valuable consideration without notice, unless he be the original party to the fraud. The *bonâ fide* purchase purges away the equity from the title in the hands of all persons who may obtain a derivative title, except it be that of the original party, whose conscience stands bound by the violation of the trust, and a meditated fraud. 1 Story, Eq. Jur. 397, 398, and cases. Atwood, therefore, can derive no benefit from the purchase of Hunter, even if that had purged the equity of Rogers, as that equity immediately attached on the reassignment of the judgment to Lindsey, and bound it in his hands; and any one coming in under him chargeable with notice stands in no better situation.

In every view, therefore, that we have been able to take of the case, we think the decree of the court below erroneous, and

should be reversed, and the proceedings remitted; with directions to enter a decree that the complainant is entitled to the fund in court collected upon the judgment against Bennett, together with costs of suit in this court and in the court below.

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that court to enter a decree in favor of the complainant for the fund in court collected upon the judgment against Bennett, together with the costs of this suit in this court and in the said Circuit Court.