Nicholas Trammell et al. v. Thomas McDade et al.

The certificate of the officer who takes depositions should show that the witness subscribed and swore to his answers. (Paschal's Dig., Art. 3728, Note 846.)

An interrogatory which refers a witness to his previous examination in the same cause, and asks him if that be true, is leading and inadmissible.

That is a leading question which suggests to the witness the answer which he is desired to give.

The assignment of errors ought distinctly to state the ground on which the appellant or plaintiff in error relies. (Paschal's Dig., Art. 1591, Note 618.)

The sale by one part owner, while it does not affect the interest of the joint owner, yet it operates as against the vendor, binding him by way of estoppel,

The conveyance of an undivided share of the estate in common is made in like manner as if the tenant in common was seized of the entirety. But one joint tenant or tenant in common cannot convey a distinct portion of the estate, by metes and bounds, so as to prejudice his co-tenants or their assignees, though it may bind him by way of estoppel.

Tenants in common of personal estate may force a partition. (Paschal's Dig., Arts. 4711 to 4716.)

The purchaser of goods from one tenant in common, and the delivery of possession, confer a good title against the lawful owner until he makes known his title to the vendee.

Nothing was furnished to the *Reporter* but the opinion. That does not indicate the county from which the appeal came, nor before whom the cause was tried. The facts are sufficiently indicated in the opinion for all practical purposes. An application was made to the clerk for the record, but he could not find it.

Donley, J.—The first assignment of error is, that "the court erred in excluding the evidence offered by the plaintiffs, which will appear by bill of exception." This assignment is believed to refer to the depositions of John R. White. The first deposition of the witness appears to have been taken by Briggs, a notary public, and was properly excluded on the objection. It does not appear from the

certificate of the officer that the witness swore to and subscribed the deposition. The second deposition of the witness was objected to because the interrogatories were leading. The objection, we think, was properly sustained. The first interrogatory is as follows: "Your deposition was taken in this case on the 17th day of August, 1855, before W. W. Briggs, notary public of Cherokee county, a certified copy of which deposition, interrogatories, and answers, and certificates of the officer, is as follows, viz," (giving a copy of the interrogatories and answers of the witness on his first examination,) and requests the witness to examine the same, and state whether the facts therein stated were true, according to the recollection of the witness, at the time of giving his first deposition. The witness states, that the answers he gave before Briggs were true, to the best of his recollection and belief at that time. He does not state whether he has a recollection of the matter at the time he is last testifying.

In Sydnor v. Sydnor, 6 Binney, 489, the court says: "The question was so framed as to indicate particularly the answer which the plaintiff wished." It was held that the plaintiff in error had supported the exception to the deposition.

In Tenney v. The State, 8 Smede & Marsh., it is said, " That is a leading question which suggests to the witness the answer desired." (1 Greenl. on Ev., § 434.)

It is difficult to conceive of a more objectionable form of putting a question to a witness than is presented in this case. His previous deposition is set out, interrogatories and answers, and the substance of the last interrogatory is to know if the first answers were true, according to the recollection of the witness at the time of giving the first answers; and the witness answers, that the answers first given were true, according to his recollection at that time. The deposition was properly excluded. The witness does not propose to give his recollection at the time of testify-

ing, except by reference to the first deposition, and his belief that his first answers were true when made.

The second assignment is, "That the court erred in refusing the charges asked by plaintiff, and in giving the charges asked by the defendant." This is a very general charge, and but an imperfect compliance with the law, requiring an assignment of error to be filed with the clerk of the court below. It does not, in the language of the law (O. & W. Dig., Art. 1927,) [Paschal's Dig., Art. 1591, Note 618] distinctly specify the grounds on which the appellant relies as being erroneous in the charge. On looking to the record, we find there were four charges that were asked by the plaintiff and refused, and four charges given at the request of the defendant. In what respect any are erroneous is not stated in the assignment. On an examination of these charges, we do not perceive that they are in any respect erroneous. The question, however, is not so presented by the assignment of errors as to require a more thorough discussion. The insufficiency of a charge or the error in any ruling of the court that is desired to be reversed, unless it be an error going to the foundation of the action or ground of defense, as has often been said, to receive attention, must be presented by a proper assignment of errors. (Roy v. Bremond 22 Tex., 628.)

The third assignment is, "that the verdict is contrary to the law and evidence." The fourth is, that "the court erred in overruling the motion of plaintiff for a new trial." These assignments will be considered together. If the verdict is contrary to law and evidence, a new trial should have been granted.

The evidence shows that Violet, one of the negroes mentioned in the petition, was sold by Philip Trammell, one of the heirs of Nicholas Trammell, and one of the joint owners of the negro, to the defendant, McDade, and that this negro was afterwards sent to Memphis, Tennessee.

It does not, however, appear from the evidence that the defendant, at the time he purchased the negro woman, or at the time of sending her to Memphis, had any reason to doubt his title to the negro. The evidence of the removal of the negro to Memphis appears to have been given without objection. If it were relied on as a conversion by the defendant, it should have been alleged in the pleadings. Defendant alleges that the woman, Violet, died, but does not aver the removal, nor is the removal anywhere averred in the pleadings in the cause.

The allegations of the plaintiffs are, " That the defendants, Thomas McDade and James McDade, one or both of them, have in their possession certain of the slaves belonging to said estate of Philip Trammell, deceased, four in number, naming them, Violet and two others." " That said defendant had not delivered them to plaintiff, as in good conscience they ought to have done, but they, one or both defendants, concealed the same from petitioner, and appropriated them to their own use and benefit, and refuse to account to petitioner for the same, their value, or any part thereof."

If it should be admitted that the allegations in the pleadings are sufficient to authorize the admission of the testimony and a judgment upon it against defendant, yet the judgment cannot be disturbed as being contrary to or unsupported by the evidence.

The purchase of a slave by the defendant from one of the joint owners of the slave, and the subsequent death of the slave while in the possession of such purchaser, cannot be held as rendering the defendant liable for the value of the slave, without allegation and proof that defendant had improperly treated said slave, or that he had improperly removed her to Memphis and by that means caused the death of the slave; and, if such allegations had been made, they should be sustained by evidence to authorize a verdict upon the allegations.

The sale by one part owner, while it is inoperative as against the other joint owners, and clearly cannot affect their interest in the property, yet it will operate as against the vendor, binding him by way of estoppel.

"The conveyance of an undivided share of the estate in common is made in like manner as if the tenant in common was seized of the entirety. But one joint tenant or tenant in common cannot convey a distinct portion of the estate by metes and bounds, so as to prejudice his cotenants or their assignees, though it may bind him by way of estoppel." (4 Kent Com., 468; C. & I. Seldon v. Hickock, 2 Caines, 166.) "Personal property may be held by two or more persons, in joint tenancy or in common, and may be conveyed in like manner." (2 Kent Com., 435.)

The sale, then, by Philip Trammell had the effect to vest in the defendant, Thomas McDade, the interest which said Trammell had in the woman, Violet. That interest being an undivided one, it must of necessity remain in the possession of some one of the joint owners, or with such agent as they might select to represent the whole, until a sale or division.

It is not before us to consider what action, if any, the sale of the slave by Philip Trammell to the defendant, McDade, gave to the co-heirs of said Philip Trammell as against him. Did the defendant, by the purchase, give to the heirs of Nicholas Trammell a cause of action against him to recover the slave, Violet, without any act being done by him, except the purchase of the slave, Violet? It is not believed that it did. The purchaser acquired the right of his vendor; no more. He might hold the slave till a partition was sought. He might lay himself liable to an action for the value of the slave by a destruction of the property, or, it is believed, by removing and secreting it, so that the woman could not be found; but if the slave died, without any wrongful act of the defendant causing the death, then he does not become liable in consequence of the death while

in his possession; the death being in no way attributed to him.

In Bornordistan v. Chapman, cited in Heath v. Hubbard, 2 East., new ed., 353, which was an action of trover for a ship, it is said that "Alexander Fraser, being the owner of a ship * * by a bill of sale, sold a moiety of the said ship, by way of mortgage, to the plaintiff, and afterwards, by several bills of sale, sold one moiety of the whole to one of the defendants, and the other moiety of the whole to the other defendant, and the said defendants had the said ship for sometime in their possession, and repaired the same. The money mentioned in the bill of sale to the plaintiff not being paid, the plaintiff had afterwards taken possession of the ship. The defendants, by force, took the ship out of the plaintiff's possession and carried it away. The single question intended to be made on the case, whether the plaintiff, who was tenant in common of one moiety of the ship, could maintain this action of trover against the other tenants in common, for taking the ship out of his possession by force and carrying it away, and on hearing counsel on both sides, we held, that if one tenant in common of a personal, indivisible chattel bring trover against a stranger, if the stranger do not plead the tenancy in common in abatement, he can have no benefit of it in evidence upon the general issue. That if one tenant in common destroy the said thing in common, the other tenant in common may bring trespass or trover against him, and, therefore, in this case, if the defendants had hurt or destroyed the ship, this action would have been maintainable against them; that when one tenant in common doth not destroy the thing in common, but only takes it out of the possession of the others and carries it away, there no action lies by the other tenant in common."

It is believed that if one tenant in common here should wrongfully take and hold the entire possession of a slave

owned in common, then the tenant kept out of possession might have an action for partition, and if the matter owned in common was incapable of division, then it must be sold for partition. (O. & W. Dig., Art. 1516,) [Paschal's Dig., Art. 4716.]

If the parties are tenants in common of the chattel which is the subject of this action, it will not be sufficient for the plaintiff to prove that the defendant has taken the chattel into his exclusive custody, and withholds the possession from the plaintiff; for this either party may lawfully do, each being equally entitled to the possession and use. If one part owner has the exclusive possession of the slave or other personal property, he may be compelled to make partition with those having an interest in the property with him. (O. & W. Dig., Art. 1512.) But will an action lie by one joint owner of personal property to recover the property from another joint owner? [Paschal's Dig., Art. 4711.] Holliday v. Campsell & White, 1 Term, 658, was an action of trover, which was brought to recover a box of money. Heath, J., before whom it was tried, nonsuited the plaintiff, on the ground that one tenant in common could not maintain an action of trover against another. The circumstances were these: The plaintiff and defendant, Campsell, were members of a friendly society, which was instituted for the purpose of relieving each other in case of sickness or other disability. The fund for this purpose was levied by weekly contributions from each of the members, and the aggregate sum was kept in a box, which was deposited in the plaintiff's house, and a bond was given by him for the safe custody of it. Campsell got possession of this box, carried it away, and delivered it to the other defendant, who was not a member of the society. It was held, that all the members of this society have a joint property in the box and its contents; they are therefore tenants in common, and one tenant in common cannot maintain trover against another.

Whether the sale of the whole of the entire chattel by one of several owners in common is of itself sufficient evidence of a conversion to make him liable in trover at the suit of his co-tenant, is a point upon which there is some difference of opinion.   The rule of the common law, that trespass lies where one party destroys the thing owned in common, is not controverted; and it is generally conceded that the party is equally liable in trover for an actual conversion of the property to his own use, at least when the act of appropriation is such as finally, by its nature, to preclude the other party from any future enjoyment of it, such as when it is consumed in its use. (2 Greenl. on Ev., § 646, note.)   But a sale alone was deemed insufficient to establish a conversion by the opinion of the court in Heath v. Hubbard, (2 East., new ed., 356.)

It is said in Finnings v. Lord Granville, (1 Term, 249,) that there are cases which establish the principle, that one tenant in common cannot recover for a chattel in trover against his companion, without first proving a destruction of the chattel, or something that is equivalent to it. There must be that which amounts, as it were, to an ouster, so that a tenant in common who commits it cannot account. (Tufts v. Richardson, 6 Vt., 442, 447.)

A mere purchase of goods, in good faith, from one who may in fact have had no right to sell them, or who, as the evidence shows in this case, was a part owner of the property, is not a conversion of the goods against the lawful owner, until his title has been made known and resisted. (2 Greenl. on Ev., § 462.)

The evidence is conflicting as to the fact, whether the defendant had possession of the children of the woman, Violet; and whether the children of Violet are sought to be recovered in this action is a question.   Violet is mentioned by name as one of the negroes sought to be recovered.   Two others are named: Julia, a girl, aged six, and Angeline, a girl, aged four years.   One other girl, name

unknown, and age not stated. It is further alleged, that the said defendants, one or both of them, have in their possession four others, also belonging to the said estate of Philip Trammell, deceased. It appears that the four others must have been intended, as an allegation that there were four other slaves belonging to the estate of the said Philip Trammell; the names and ages of the last-mentioned slaves being, as is alleged, unknown. It does not appear from the allegation that any of these slaves are certainly in the possession of the defendant, Thomas McDade. The allegations are, that Thomas McDade and James McDade, one or both of them, have in their possession certain slaves. This certainly does not fix the property in the possession of Thomas McDade; for the chances are equal that the negro was in the possession of James McDade, if the allegations of the petition are to be regarded as true; yet it cannot be affirmed from these allegations that the children of the woman Violet are in the possession of the defendant, Thomas McDade. And the proof is more uncertain than the allegations.

James McDade proved that his brother, Thomas McDade, purchased from Henry Trammell a woman, name unknown, and two small children of said woman, one aged about one year and one about two. The three children described in the petition are from four to six years of age; the others are not so described as to identify them. It cannot be affirmed, from the testimony, that any of the children mentioned in the petition of the plaintiffs are the children of the woman Violet. In opposition to the proof of identity of the children, as being the children of the woman Violet, is the answer of defendant, Thomas McDade, used in evidence by plaintiffs, in which it is averred, that the defendant never had possession of any negroes mentioned in the plaintiff's petition, except the negro woman Violet. This clearly does present a case of conflicting testimony. If it can be held that the woman,

stated by the witness to have been purchased by the defendant, Thomas McDade, from Philip Trammell, was the woman Violet and her two children, it presents such a case of conflict in the testimony, that, under repeated decisions of this court, the judgment rendered on such verdict should not be disturbed. It cannot be said that there is no testimony supporting the verdict, or that the weight of testimony against the verdict is such as to require that the judgment be set aside, and a new trial granted.

It might well be questioned, if the evidence were less satisfactory than it is, or if the evidence were more direct as to children of Violet being in the possession of the defendant and involved in this controversy, whether the defendant, being in the possession of the slaves, as the vendee of Philip Trammell, one of the heirs of the deceased, Nicholas Trammell, as a part owner of the slaves, would be liable to an action, except for a partition, which is not sought in this action; and might he not, under the authorities we have cited, make a successful defense to this action to dispossess him of the children of Violet? It is believed, however, that the judgment may properly be affirmed, for the reason that it does not appear that the verdict is clearly wrong. The judgment is

AFFIRMED.