## J. N. COLLIER ET AL. v. WM. CAMERON & COMPANY.

Decided April 7, 1909.

**1.—Cotenancy—Waste—Liability.**

A cotenant of land who cuts and appropriates, or authorizes another to cut and appropriate the timber growing upon the common estate, is liable to the other cotenant for the value of his portion of the timber appropriated.

**2.—Same—Liability of Purchaser—Cases Distinguished.**

One who with knowledge of the cotenancy purchases from a cotenant the timber growing upon the common estate and appropriates the same, is liable to the other cotenant for his share of the value of the timber so appropriated. The cases of Gillum v. Railway, 5 Texas Civ. App., 338, and McClanahan v. Stephens, 67 Texas, 354, distinguished.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Mooney & Mann* and *John L. Little,* for appellants.

*Taliaferro & Nall, Dies, Singleton & Dies* and *Lanier & Martin,* for appellees.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellants against Wm. Cameron & Company, a corporation, J. L. McElyea, William Parker and his wife, Callie Parker, and W. W. Cruse to try title to 320 acres of land, and to recover the sum of $5,000 alleged to be due appellants for pine lumber cut by them off of the 320 acres of land belonging to appellants. All of the appellees pleaded misjoinder of causes of action. Cameron & Co. and McElyea disclaimed all interest in the land. The corporation also answered that it bought the timber on the land from McElyea, who represented that he was the owner of the land sued for, and that it had no notice that appellants claimed the land, and that appellants had no cause of action against it. McElyea filed a general denial, and plea of two years limitation. Cruse pleaded general denial, not guilty, and three and five years limitations. Parker and wife disclaimed all interest in the land, except as tenants of W. W. Cruse. The court instructed a verdict for appellants for one-half the land and against them as to the damages.

It seems to be conceded by all parties that appellants own now and owned at the time of the conversion of the timber a one-half undivided interest in the 320 acres of land, and it is not controverted that McElyea sold the timber to Wm. Cameron & Company for himself and Cruse, and that they appropriated the proceeds thereof to their own use and benefit. It is also conceded that Wm. Cameron & Company cut the timber off the land, one-half of which belonged to appellants, and converted it to its own use.

If appellants owned one-half of the land they owned one-half of the timber attached thereto, and when the timber was converted they had the right to recover its reasonable value from those who converted it. As said by the Supreme Court of Minnesota in the case of Shepard v. Pettit, 14 N. W., 511: "The trees, when severed, became personal property and, unless the severing them vested the exclusive title in defendant, they belonged afterwards, as when they were part of the realty, to the parties as tenants in common. One cotenant who, without the consent of the other, sells as his own the joint personal property, thereby severs the cotenancy and is liable to the other for the conversion of his share. . . . One cotenant of real estate may, in the absence of any agreement, and if he do not

exclude the other from a joint occupation with him, exclusively possess and occupy the land, and may make such profit as he can by proper cultivation or other usual means of acquiring benefit therefrom and retain the whole of such benefits. In other words, he is not to be deprived of the beneficial use and enjoyment of the land merely because his cotenant does not see fit to insist upon enjoying such use with him, nor is he required in such case to share with the other the benefits of his skill and labor bestowed in the proper use and employment of the common property. The products of his skill and labor in such use and employment are his. But this right to retain, use and appropriate the benefits of the land extends only to the products of its proper use and employment and not to anything which is a part of the land itself and not severable in the proper use of it."

Not only is the cotenant liable for the timber sold by him, as in this case, but the purchaser of such timber, with a knowledge of the cotenancy, would also be liable. As said in the Kentucky case of Nevels v. Kentucky Lumber Co., 49 L. R. A., 416: "It is clear that it is waste to cut and remove the timber off the timbered land, and where this is done by a tenant in common his cotenant may, at his election, claim the property in the hands of a purchaser, or hold him liable for a conversion." As to the liability of the cotenant, see also Hunter v. Hodgson (Texas Civ. App.), 95 S. W., 637; Roberts v. Roberts (Texas Civ. App.), 99 S. W., 886; Adams v. Thornton (Cal. App.), 90 Pac., 713; Sutherland v. Carter (Mich.), 18 N. W., 223; Wattle v. Dubois (Mich.), 34 N. W., 672.

It was held in the case of Gillum v. Railway, 5 Texas Civ. App., 338, that a tenant in common has the right to sell marketable timber growing on the common estate and pass a clear title thereto to the purchaser, and no right of action would accrue to the other cotenants against the vendee who carries off and uses the same, but that was in a case where the evidence did not show that all the timber was cut, or that enough was not left to secure the complaining party in his pro rata share of the timber.

In the same report as the case last mentioned the Court of Civil Appeals of the Second District held that where the property has been lost to a cotenant through the agency of a vendee of another cotenant, the vendee would be liable for such loss to the other cotenant. Worsham v. Vignal, 5 Texas Civ. App., 471.

In the case of Trammell v. McDade, 29 Texas, 360, it was held that the purchaser of goods from one tenant in common, and the delivery of possession, conferred a good title against the lawful owner until he makes known his title to the vendee.

In the case of Worsham v. Vignal, 14 Texas Civ. App., 324, it was held that a third party who bought cattle from a joint owner with notice of the joint ownership, would be liable to the other owner for his part of the cattle.

In the case of Mast v. Tibbles, 60 Texas, 301, it was held: "It is well settled that a purchaser from one tenant in common can not acquire and hold to the prejudice of a cotenant any specific portion of the common estate. Parties so taking must hold subject to all

equities existing between cotenants, to be worked out in the partition of the land."

In the case of Cosgriff v. Dewey, 164 N. Y., 1, a tenant in common in possession of land had converted the rock on it, and the court held, in an action by the other cotenant for his share: "The stone which the defendant quarried and converted to his own use was a part of the freehold and, therefore, was the common property of all. It was not, in any proper sense, the product of the land itself. It did not represent the use of the land or the rents and profits, but to the extent that it was taken by the defendant operated as a diminution of the estate. If the defendant had taken valuable timber from the land and sold it or converted it into lumber, there is no doubt, we think, that he would be liable to account for its value to his cotenants. The act of taking timber and the act of taking stone, whether it be traprock or marble, can not be differentiated so far as the question of waste is concerned. Whether the stone which the defendant quarried upon the land and converted to his own use be considered personal property or part of the realty, he was bound to account to his cotenants for their proportion of its value." To the same effect are Gates v. Bowers, 169 N. Y., 14, and Abbey v. Wheeler, 170 N. Y., 122.

The evidence showed without contradiction that McElyea and Cruse acted together in the appropriation of pine timber, one-half of which they knew belonged to appellants, and they are liable for its conversion; and if Wm. Cameron & Company had notice that appellants owned an interest in the timber, or if it was put upon inquiry by the circumstances as to that fact, it too should be held liable to appellants for one-half the value of the lumber.

The part of the judgment which gives one-half the land to appellants is not assailed, and it will be affirmed in all particulars, but in so far as it adjudges that appellants should not recover any damages of McElyea, Cruse and Wm. Cameron & Company it will be reversed and the cause remanded for a trial in consonance with this opinion.

### ON MOTION FOR REHEARING.

The case of McClanahan v. Stephens, 67 Texas, 354, liberally quoted from by appellees, has no applicability whatever to the facts of this case. In that case the defendants sold the land to another and not the timber, and it was held that the sale was not the effective cause of the cutting of the timber. In this case the timber was sold, and with the purpose of having it taken from the land. The distinction is too clear to warrant discussion or argument.

The evidence shows that practically all the timber was cut that was growing on the entire tract. Pedago swore: "The pine timber on that tract of land has been cut." Salter, the manager of Wm. Cameron & Company, swore that before he went on the tract to cut the timber he estimated that the land had seven hundred and fifty thousand feet of lumber on it, but that he cut about a million feet on the tract. In another place the witness stated, in connection with the cutting of timber on another tract, "I think we had cleaned up

the Mancil before we cut this." If they had "cleaned up" the land in controversy, it would justify a finding that all the timber of any value had been cut.

There is no merit whatever in the motion and it is overruled.

*Affirmed in part and reversed and remanded in part.*