**SLAUGHTER et al. v. QUALLS.**

No. 5267.

Court of Civil Appeals of Texas. Amarillo.
March 10, 1941.

Rehearing Denied April 7, 1941.

Robert Howard, Geo. S. Berry, and Bradley & Wilson, all of Lubbock, and Kilgore & Rogers, of Wichita Falls, for appellants.

G. E. Lockhart and W. R. Porter, both of Lubbock, and Carl Ratliff, of Levelland, for appellee.

STOKES, Justice.

This suit in the nature of trespass to try title was filed on September 8, 1938, by appellee, H. B. Qualls, against the appellants, Sue Alice Slaughter and her husband, R. L. Slaughter, Jr., Sid W. Richardson, the Richardson Oils, Inc., the Great Southern Life Insurance Company, and Bob Slaughter, to recover the west one-half of tract No. 52 of the Bob Slaughter Block in Hockley County. By amended petition A. S. Goss, Federal Land Bank Commissioner, was made a party defendant, and Bob Slaughter was omitted. On April 1, 1940, appellee filed his third amended original petition upon which the case was tried and in which, in addition to the ordinary allegations of trespass to try title, he alleged numerous other grounds upon which he contends he is entitled to recover the land from all of the defendants. Since there is no controversy concerning the pleadings we do not deem it necessary to detail the allegations.

The record reveals that on January 6, 1928, Bob Slaughter conveyed to appellee the tract of land in controversy and as part of the consideration therefor appellee executed six notes. The first five notes were payable out of the proceeds of one-third of the cotton to be raised on the land, and the sixth note, in the sum of $489.92, bearing 7% interest payable annually, was due ten years after date. A vendor's lien was retained in the deed to secure the payment of the entire series of notes and as additional security of the sixth note, appellee executed a deed of trust on the land in which R. L. Slaughter, Jr., was named as trustee. On the 6th of May, 1931, Bob Slaughter assigned the $489.92 note to R. L. Slaughter, Jr., and on the 21st of January, 1932, R. L. Slaughter, Jr., assigned it to his wife, Sue Alice Slaughter. On October 28, 1933, R. L. Slaughter, Jr., executed and acknowledged an instrument in which he resigned as trustee, stating in the resigna-

tion that he was unable to act in such capacity and that he thereby refused to do so. A few days later Sue Alice Slaughter, joined by her husband, R. L. Slaughter, Jr., by written instrument, appointed A. J. Richards as substitute trustee and, upon request of Sue Alice Slaughter, he advertised the land for sale at the courthouse door on the 5th of December, 1933. At this sale Sue Alice Slaughter became the purchaser and A. J. Richards, the substitute trustee, executed and delivered to her a trustee's deed, in regular form, in which he purported to convey the land to her.

On December 8, 1933, the Slaughters conveyed the land to J. L. Stowers and as part of the consideration Stowers executed ten notes in the sum of $195.96 each, due one to ten years, respectively, and on the 1st of August, 1934, Stowers procured a loan from A. S. Goss, Federal Land Bank Commissioner, in the sum of $2700. This loan was made to take up and extend $1,306.40 prior indebtedness on the land, $1,184.22 of the series of vendor's lien notes executed by Stowers to Sue Alice Slaughter, and $209.38 delinquent taxes due on the land.

On November 21, 1934, Stowers conveyed the land back to Sue Alice Slaughter and as part of the consideration therefor Mrs. Slaughter assumed the payment of the $2,700 note which Stowers had executed to the Land Bank Commissioner, and on the 1st of April, 1935, Mrs. Slaughter, joined by her husband, R. L. Slaughter, Jr., conveyed it to A. E. Coe, who likewise assumed the $2,700 note held by the Land Bank Commissioner, and on the 10th of April, 1937, Coe reconveyed it to Mrs. Slaughter.

On July 2, 1937, after the land had been reconveyed to her by A. E. Coe, Mrs. Slaughter, joined by her husband, R. L. Slaughter, Jr., executed an oil and gas lease on the land to appellant, S. W. Richardson, the lease to remain in force for a term of three years and as long thereafter as oil or gas could be produced from any wells drilled thereon, and on the 3rd of July, 1937, the Slaughters conveyed to Richardson one-fourth of the oil, gas and other minerals in the land. On August 20, 1938, Richardson conveyed to appellee, Richardson Oils, Inc., the oil and gas lease, reserving a one-fourth overriding royalty in any oil and gas that may be produced, and on the 22nd of August, 1938, Richardson executed a deed of trust to W. S.

Horne, trustee, in which he conveyed to the trustee the overriding royalty interests reserved by him in the land here involved, together with a large number of other properties, to secure appellant, the Great Southern Life Insurance Company, in the payment of an indebtedness of $2,000,000.

After the above mentioned transactions had been completed and the deeds, oil and gas lease, deed of trust and assignments involved therein, were all executed and placed of record in Hockley County, appellee instituted this suit, in which he sought to recover from all of the appellants the land in controversy upon the ground, principally, that the foreclosure by A. J. Richards, substitute trustee under the original deed of trust, was ineffective, and the trustee's deed executed by him to appellant, Sue Alice Slaughter, was void for a number of reasons, among them being that A. J. Richards was not properly appointed as substitute trustee and that the sale was not, in fact, made by him but was made by Douglas Witherspoon who did not possess authority to make the sale.

The case was submitted to a jury upon special issues and upon the verdict returned by the jury in answer thereto the court, on the 2nd of April, 1940, entered judgment in favor of appellee against all of the appellants, cancelling and holding for naught the trustee's deed of A. J. Richards, substitute trustee, and all subsequent deeds, liens, oil leases, assignments and instruments by which the land or any interest therein was conveyed, assigned or mortgaged, except the deed of trust and lien held by A. S. Goss, Federal Land Bank Commissioner, to secure the note for $2,700. Since appellee, in his pleadings, did not seek to cancel the lien of the Land Bank Commissioner and acknowledged the validity thereof, it will not be necessary to discuss that phase of the case.

At the close of the testimony appellants filed and urged motions for judgment, and after the verdict was returned they presented their motions for judgment non obstante veredicto. These motions were overruled by the court and, after the judgment was entered, they presented their motions for a new trial, which were likewise overruled, and they duly excepted and have perfected an appeal to this court.

The record is voluminous and a large number of assignments of error and propositions of law are presented in the brief, but we do not deem it necessary to dis-

cuss them in detail. The real questions to be decided are, first, whether or not appellee was entitled to recover against Sid W. Richardson, the Richardson Oils, Inc., and the Great Southern Life Insurance Company and, secondly, whether or not he was entitled to recover against Sue Alice Slaughter and her husband, R. L. Slaughter, Jr. As we have said, all of the appellants presented to the court their motions for an instructed verdict and also motions for judgment in their favor non obstante veredicto. These motions were overruled by the court and as we view the record no controversy is shown in the testimony concerning the controlling questions in the case.

The Richardson group of appellants, that is, Sid W. Richardson, the Richardson Oils, Inc., and the Great Southern Life Insurance Company, contend that appellee was not entitled to a judgment against them because each of them holds and claims title as an innocent purchaser and that under the evidence in the case they are protected by the law which secures to them their respective interests in the land because they purchased the same for value and without notice of any of the defects or infirmities in their title which form the basis upon which appellee seeks to recover the land. The basis of their title is the purported foreclosure sale by A. J. Richards, substitute trustee, and his trustee's deed to Sue Alice Slaughter. The deed of trust contained the usual provision concerning the appointment of a substitute trustee in the event of the death of the original trustee or his removal from Lubbock County, or his refusal, failure or inability for any reason, within ten days after request by the holder of the note secured thereby, to make the sale or perform the trusts imposed upon him by his appointment. The record contains an instrument duly signed and acknowledged by R. L. Slaughter, Jr., in which he recites his appointment as trustee and states that he is unable to act as such. It closes with a notice to Sue Alice Slaughter, the owner of the note secured by the deed of trust, that he is unable to act as trustee and refuses to do so. The resignation of the trustee bears date October 28, 1933, and on the 9th of November, 1933, Sue Alice Slaughter, joined by her husband, in writing, duly appointed A. J. Richards as substitute trustee. On the 5th of December, 1933, A. J. Richards as substitute trustee executed and delivered to Sue Alice Slaughter a trustee's deed in due form in which he conveyed the land to her. In this substitute trustee's deed A. J. Richards stated that appellee had made default in the payment of the interest due on the note for the years 1928, 1929, 1930, 1931 and 1932. He further stated that Sue Alice Slaughter had requested R. L. Slaughter, Jr., to sell the land under the deed of trust and he had refused to act as trustee or enforce the deed of trust and had resigned as such trustee and that Sue Alice Slaughter, the holder of the note, had appointed the grantor, A. J. Richards, as substitute trustee. The trustee's deed recites all of the conditions provided in the deed of trust as being necessary to authorize A. J. Richards as substitute trustee to sell the land. It recites furthermore that he did sell the land in the manner provided by the deed of trust and that it had been purchased at the sale by Sue Alice Slaughter. After she purchased it at the sale and received the substitute trustee's deed, she executed the oil and gas lease to Sid W. Richardson and conveyed to him one-fourth of any oil and gas that may be in the land. Richardson thereafter executed the assignment of the oil lease to Richardson Oils, Inc., and the deed of trust to W. S. Horne, trustee, to secure the Great Southern Life Insurance Company in the payment of the indebtedness therein mentioned. There is nothing in the record which indicates that either Richardson, the Richardson Oils, Inc., or the Great Southern Life Insurance Company had any knowledge of the actual manner in which A. J. Richards conducted the trustee's sale and, the proceedings in that respect being shown in the trustee's deed to be regular in every respect, it must follow that the Richardson group of appellants are protected as innocent purchasers unless they are defeated by the contentions of appellee pertaining to the appointment of A. J. Richards as substitute trustee and the manner in which the sale was actually conducted. Randolph v. Citizens Nat. Bank, Tex.Civ.App., 141 S.W.2d 1030.

■ The deed of trust provides that in case of the death of R. L. Slaughter, Jr., trustee, or of his removal from Lubbock County or his refusal, failure or inability for any reason "within ten days after such request by the holder or holders of said note * * * to make said sale or to perform said trust", then the legal holder or holders of the note may appoint in writing

a substitute trustee. Appellee contends that the Richardson group of appellants cannot prevail under the doctrine of innocent purchasers because the record does not show that the refusal or failure of R. L. Slaughter, Jr., took place, or happened, within ten days after he had been requested to make the sale by the holder of the note He contends that, appellants not having shown that such failure or refusal took place within the ten days specified in the deed of trust, they were charged with notice that Slaughter's refusal to make the sale may not have taken place within ten days after he had been so requested, and that, therefore, they must take notice of any iregularities in the manner in which he conducted the sale. We cannot agree with appellee in this contention. The real basis for the appointment of a substitute trustee is the refusal, failure or inability of the original trustee to make the sale and, granting that the language contained in the deed of trust is subject to the construction placed upon it by appellee, the recital in the trustee's deed to the effect that the trustee had been requested to make the sale carries with it the idea that such request had been made in accordance with the provisions of the deed of trust. The courts will not indulge the presumption that a refusal to act as trustee was made without a proper request to act having been made. On the contrary they will indulge the presumption that the request was properly made where the record shows, as it does in this case, that the request was actually made. McCollum v. Jones, Tex.Civ. App., 141 S.W. 1030; Wiener v. Zweib, Tex.Civ.App., 128 S.W. 699.

■ There being nothing in the record to show that Sid W. Richardson, the Richardson Oils, Inc., or the Great Southern Life Insurance Company had knowledge. of any infirmaties or irregularities in the substitute trustee's sale, and the resignation of the original trustee, the appointment of the substitute trustee and the substitute trustee's deed being regular in form and complying in every detail with the provisions of the deed of trust, and showing on their faces that each and every condition, even to the minutest detail, which had been laid down by appellee in the deed of trust had been observed, they were warranted in assuming that Sue Alice Slaughter had procured at the trustee's sale the full title owned by appellee in the land and in our opinion the court erred in refusing to give to the jury the peremptory instruction in their favor.

The Slaughter group of appellants, that is, Sue Alice Slaughter and her husband, R. L. Slaughter, Jr., appear in an entirely different light, however, from that of the Richardson group and, in our opinion, appellee was entitled to a judgment against them. While the trustee's deed was executed by A. J. Richards, the duly appointed substitute trustee, yet the testimony shows and the jury found that as a matter of fact he did not make the sale but the sale was actually made by Douglas Witherspoon who had no authority whatever to act in any capacity with reference to the sale. Richards was present when the sale was opened by Douglas Witherspoon, but very soon after Witherspoon began to read the notice of sale Richards left the place where the sale was being conducted and did not return during the entire time the proceedings which culminated in the sale were in progress. Witherspoon "cried off" the sale, received the bid offered, accepted the bid, and declared the property sold to Sue Alice Slaughter. The record shows that several other similar sales were made at the same time and that all of them were conducted by Witherspoon acting at the request of A. J. Richards, the substitute trustee.

■ The law has been settled by a long line of decisions of the courts of this state that such sales must be conducted by the trustee in person. He cannot delegate to others the authority conferred upon him by the debtor in the deed of trust. The details with reference to his conduct at the sale which are set forth in the instrument by which he is appointed must be strictly observed. His duty to execute in person the powers granted to him is not discretionary and the instructions given to him by the instrument under which he is to act are not directory but mandatory in their nature. Fuller v. O'Neal, 69 Tex. 349, 6 S.W. 181, 5 Am.St.Rep. 59; Estelle v. Hart, Tex.Com.App., 55 S.W.2d 510; Bemis v. Williams, 32 Tex.Civ.App. 393, 74 S.W. 332; Randolph v. Citizens Nat. Bank, Tex.Civ.App., 141 S.W.2d 1030. It is not a case of Richards, the duly appointed substitute trustee, being in charge of the sale and merely requesting Douglas Witherspoon to assist him but, as we have already shown, the entire sale was turned over to Witherspoon who conducted it in all of its details, exercising every duty and

performing every act in connection with it that was conferred upon Richards by the deed of trust and his appointment as substitute· trustee. It must be concluded, therefore, that the sale of appellee's land, made, as it was, by one who possessed no authority to make it, was void, at least in so far as appellee and Mrs. Slaughter were concerned and she, therefore, acquired no title by becoming the purchaser at the sale and receiving the trustee's deed from Richards.

The Slaughter group of appellants contend that even if the trustee's sale was void and the deed executed to Mrs. Slaughter by A. J. Richards, the substitute trustee, was ineffective to pass title, still she was entitled to a judgment against appellee in this case because she occupies the position of an innocent purchaser under her deed from Stowers. They base this assertion upon the ground that when she sold the land to Stowers, after she purchased it at the trustee's sale, Stowers was an innocent purchaser and knew nothing of the manner in which the trustee's sale was conducted. They contend, therefore, that Stowers being an innocent purchaser, Mrs. Slaughter succeeded to all of the rights which were possessed by Stowers and that, regardless of the fact that she is charged with knowledge of the ineffectiveness of the trustee's sale and the deed which she received from the trustee, she succeeded to the rights of Stowers and stepped into his shoes as an innocent purchaser. The general rule is well established in this and many other jurisdictions that if a second purchaser who has notice acquires title to land from a former purchaser who was without notice and in all respects a bona fide purchaser, the second purchaser succeeds to the rights of the former purchaser and is protected as he would have been. But to this general rule there is a well defined and established exception to the effect that if title to land is held by one who is affected with notice of infirmities conveys it to a bona fide purchaser and afterwards takes a reconveyance to himself of the same title, all the equities against him are revived and attach to the title in his hands. The reason for the exception is that the doctrine of innocent purchaser requires good faith as well as the payment of a valuable consideration and the absence of notice. Pomeroy's Equity Jur., 4th Ed., Vol. 2, par. 754, p. 1546; Walling v. Rose, Tex.

Civ.App., 2 S.W.2d 352; Rogers v. Lindsey, 13 How. 441, 54 U.S. 441, 14 L.Ed. 215.

Mrs. Slaughter purchased the land at the foreclosure sale and, therefore, is charged with notice of the acts and conduct of the substitute trustee, as well as those of Douglas Witherspoon which rendered the pretended sale ineffective and void. It is no doubt true that Stowers procured a good title to the land as an innocent purchaser for value and without notice of the fraudulent acts which rendered the trustee's sale void, but when he conveyed the land back to Mrs. Slaughter, instead of investing her with the benefits which he enjoyed as an innocent purchaser, he merely placed the title back where he found it and Mrs. Slaughter thereafter stood bound by the effects of the violation of the trust. She, therefore, cannot hold as an innocent purchaser by virtue of the fact that Stowers was such and the same must be said, of course, as to the transaction in which she later conveyed the land to A. E. Coe and Coe reconveyed it to her.

The Slaughter group of appellants further contend that, even if the trustee's sale was void and ineffective, the facts are that, under the ·deed which she procured from the substitute trustee, she took possession of the land and sold it to Stowers and again to A. E. Coe, and that these acts on her part were tantamount to a rescission of the sale which had originally been made by Bob Slaughter to appellee in which the vendor's lien note held by her was created and in which a vendor's lien was retained to secure the same. It is true that under some circumstances the holder of a vendor's lien may rescind the sale without notice to the debtor. Thompson v. Robinson, 93 Tex. 165, 54 S.W. 243, 77 Am.St.Rep. 843; Gardener v. Griffith et al., 93 Tex. 355, 55 S.W. 314; McPherson v. Johnson ·et al., 69 Tex. 484, 6 S.W. 798; Lewis v. Powell, Tex.Civ.App., 205 S.W. 737. And it has been held that a stranger who purchases land at a judicial sale which is made under a void judgment does not become invested with the title to the land, but, by furnishing the money with which the vendor's lien notes are satisfied, he replaces the original holder of the notes and succeeds to the same rights theretofore held by the latter in regard to the right of rescission. It is said, therefore, that, when he sells the land to another, he thereby exercises the right of rescission as

658

the owner of the superior title and conveys good title to his vendee. Williams v. Tooke, Tex.Civ.App., 116 S.W.2d 1114. Appellants contend that this was the effect of Mrs. Slaughter's sale to Stowers and also of Stowers' sale back to her. It is obvious, we think, that Stowers, however, could not occupy the position of a holder of the superior title because Mrs. Slaughter did not attempt to convey to him the superior title to the land represented by the vendor's lien nor did he pay the money which discharged the debt under the foreclosure sale. Mrs. Slaughter cannot maintain her contention that if the foreclosure sale was void, then her act in conveying the land to Stowers in effect rescinded the original sale made to appellee by Bob Slaughter because, by having the land advertised for sale and having it sold by the substitute trustee and buying it in at the sale, she elected to affirm the title in appellee and she could not, without notice to him, at the same time and by virtue of the same act rescind the sale and repossess herself of the land. Walls v. Cruse, Tex. Com.App., 235 S.W. 199; Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857, 22 Am.St. Rep. 59; Dillingham v. Kerr, Tex.Civ. App., 139 S.W. 911; Tom v. Wollhoefer, 61 Tex. 277; Breeding v. Farm & Home Sav. & Loan Ass'n, Tex.Civ.App., 90 S.W. 2d 272, reversed on other grounds, Farm & Home Sav. & Loan Ass'n v. Breeding, 131 Tex. 518, 115 S.W.2d 615; Patterson v. Shell Petroleum Corp., Tex.Civ.App., 143 S.W.2d 208; Gandy v. Cameron State Bank, Tex.Civ.App., 2 S.W.2d 971; First Trust Joint Stock Land Bank v. Hayes, Tex.Civ.App., 90 S.W.2d 331.

▮▮ Mrs. Slaughter having pursued her rights under the deed of trust, appointed the substitute trustee and caused him to advertise the land for sale, and having attempted to purchase the same at the sale and accepted a deed of conveyance from the substitute trustee, and thereafter having conveyed the land to Stowers, and pursued this entire course under the rights extended to her by the deed of trust, elected to affirm the original sale by Bob Slaughter to appellee and enforce the collection of the note. Roberts' Heirs v. Lovejoy, 60 Tex. 253. Her remedy thus pursued having become ineffective by the unwarranted and illegal manner in which the substitute trustee attempted to make the sale, her election was not irrevocable and she, no doubt, had the right to abandon the whole course theretofore pursued by her; but she did not do so. Having once elected to affirm the sale and enforce the payment of the purchase money note by sale under the power in the deed of trust, she could not thereafter change her election, disaffirm the sale, and rescind under the original vendor's lien without giving to appellee notice of her intention to do so and a reasonable opportunity to comply with his contract by discharging the note and thereby relieving his land of the vendor's lien. Chief Justice Willie, speaking for the Supreme Court and discussing this identical question in the early case of Tom v. Wollhoefer, supra, said: "The vendor's remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance due upon the purchase money. He must not delay too long in insisting upon payment of the money as it falls due, or he will be considered as having waived the default. See Scarborough v. Arrant, supra [25 Tex. 129]. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance."

There is no evidence in the record before us of any notice to appellee of a purpose on the part of Mrs. Slaughter to rescind the sale and claim the title as assignee of the vendor's lien. The proposition is well established by the above cited authorities and many others that a vendor or his assignee, having elected to affirm an executory sale of land in which a vendor's lien is retained, and enforce payment of the purchase money note, cannot thereafter change his election so to do and disaffirm or rescind the sale without first giving notice to the debtor of his purpose to do so except under circumstances of the nature of those detailed in Thompson v. Robinson and other cases, supra, none of which exist in this case.

▮▮ Appellants make the further contention that appellee was not entitled to recover of the Slaughter group of appellants because his suit was barred by the four years statute of limitation. They base this contention upon the assertion that the suit was essentially one to cancel the trustee's deed, and the deeds executed

by the Slaughters to Stowers and Coe, and the oil and gas lease and mineral deed executed by them to Richardson, and the deed of trust executed by Richardson to W. S. Horne, trustee for the Great Southern Life Insurance Company, and, the suit not having been instituted within four years from the date such documents were executed, it was barred by the provisions of Art. 5529, R.C.S., 1925. We find no merit in this contention. What we have said shows clearly that the purported sale under the deed of trust was void and did not, as a matter of law, convey any title whatever. It is only by virtue of the generous extension of authority to the beneficiary and the original trustee and substitute trustee in the deed of trust and the unqualified statements in connection therewith that were made by the substitute trustee in his deed to Mrs. Slaughter that the Richardson group of appellants are protected in their holdings. Mrs. Slaughter is not entitled to that protection, hence the trustee's deed conveyed to her no title whatever. Appellee, therefore, was not divested of the title. It still remained in him regardless of the purported conveyance by the substitute trustee and his suit was for the land. He was therefore not barred under the four years statute of limitation and appellants' contention in this respect will be overruled. Wilson v. Armstrong, Tex. Civ.App., 236 S.W. 755; Boone v. Miller, 86 Tex. 74, 23 S.W. 574; Bowman v. Oakley, Tex.Civ.App., 212 S.W. 549; Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815.

After carefully considering the entire record and all of the contentions made by all parties to the appeal, we are impelled to the conclusion that, as to the appellants, Sid W. Richardson, the Richardson Oils, Inc., and the Great Southern Life Insurance Company, appellee was not entitled to recover, and the learned trial judge erred in overruling their motions for a peremptory instruction. What we have said demonstrates, we think, that appellee was entitled to recover of Sue Alice Slaughter and her husband, R. L. Slaughter, Jr., such title to the land as remained in them subject, however, to any amount that may still be due and unpaid on the note in the sum of $489.92, secured by the deed of trust, and subject, also, to the rights and interests of the Richardson group of appellants and the deed of trust lien held by the Federal Land Bank Commissioner. The jury found, upon disputed questions of fact, that on December 5, 1933, when the substitute trustee purported to sell the land involved, appellee was not in default in the payment of any interest due on the vendor's lien notes executed by him to Bob Slaughter. This is equivalent to a finding that the interest to that date on the series of vendor's lien notes had been paid.

The jury further found that the rental value of the land was $150 for each year from 1933 to 1940, inclusive. Appellee was entitled to recover the reasonable rental value of the premises for the two years preceding September 8, 1938, the date the suit was filed. Art. 7389, R.C.S.1925; Webb v. Martin, Tex.Civ. App., 39 S.W.2d 117. He was not, however, entitled to recover the rental value during the time the land was in the possession of Stowers and Coe. McClanahan v. Stephens, 67 Tex. 354, 355, 3 S.W. 312; Kirby v. Hayden, Tex.Civ.App., 125 S.W. 993; Collier v. William Cameron & Co., 55 Tex.Civ.App. 153, 117 S.W. 915; Caughie v. Brown, 88 Minn. 469, 93 N.W. 656. The record shows that A. E. Coe conveyed the land back to Sue Alice Slaughter on the 10th of April, 1937. Inasmuch as the special issues relating to the rental value of the land required the jury to find the value for each year as an entirety or unit, and the dates when the rental was due are not shown, and it is not shown that Mrs. Slaughter actually collected the rental for the year 1937, the record before us does not warrant a judgment in appellee's favor for the rental value for the year 1937. The judgment of the court below will, therefore, be reversed and judgment here rendered that, as to the Richardson group of appellants, appellee take nothing by his suit; but that he recover the title and possession of the land as against Sue Alice Slaughter and her husband, R. L. Slaughter, Jr., together with its rental value of $150 per year for the years 1938, 1939 and 1940, subject, however, to the balance due on the original series of six vendor's lien notes executed by appellee to Bob Slaughter, with interest thereon at the rate of 7% per annum, from December 5, 1933, and subject also to the vendor's lien and deed of trust liens given by appellee to secure the same.